[No. E059713. Fourth Dist., Div. Two. June 17, 2015.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTURO MENDEZ NORIEGA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION‡]**

‡Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts B., D., E., F. and G. of the Discussion.

## COUNSEL

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Kristine Gutierrez and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MILLER, J.**—Defendant and appellant Arturo Mendez Noriega raped and sodomized his girlfriend's stepdaughter, Jane Doe, from 2003 until 2010. Defendant was convicted of nine counts of aggravated sexual assault of a child by means of rape.[1] (Pen. Code, § 269, subd. (a)(1).)[2] Defendant was sentenced to consecutive 15-year-to-life sentences on each count for a total state prison sentence of 135 years to life. He was ordered to pay a $10,000 restitution fine within the meaning of section 1202.4, subdivision (b)(1), and a stayed parole revocation fine in the same amount was also imposed pursuant to section 1202.45.

Defendant now claims on appeal as follows: (1) Doe's direct testimony should have been stricken in its entirety because defendant did not have a meaningful opportunity to cross-examine her, which violated his federal constitutional due process and confrontation rights; (2) the trial court erred by failing to sua sponte instruct the jury with the lesser included offense of unlawful sexual intercourse with a minor (Pen. Code, § 261.5, subd. (c)) for all counts; (3) a statement made by Doe's sister, who also was molested by defendant, that defendant was just sitting in court and saying nothing when he knew what he had done to her constituted *Griffin*[3] error in violation of his Fifth Amendment right to remain silent; (4) testimony by Doe's sister that she was also molested by defendant, admitted pursuant to Evidence Code section 1108, was improper propensity evidence; (5) admission of uncharged sexual offenses pursuant to Evidence Code section 1108 violated his federal constitutional rights of equal protection and due process right to a fair trial; (6) CALCRIM No. 1191, the standard instruction given to the jury when Evidence Code section 1108 evidence is admitted, erroneously interfered with the

---

[1] Defendant was additionally charged with one count of violating Penal Code section 288, subdivision (b)(1), but that was dismissed by the trial court when it granted defendant's Penal Code section 1118.1 motion.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

[3] *Griffin v. California* (1965) 380 U.S. 609, 612–613 [14 L.Ed.2d 106, 85 S.Ct. 1229] (*Griffin*).

presumption of innocence and deprived him of a finding of guilt on proof beyond a reasonable doubt; (7) failure to instruct the jury regarding defendant's reasonable and honest belief in Doe's consent to the sexual acts as a defense to the charges constituted error; (8) the failure to instruct on consent deprived defendant of his federal constitutional rights to due process and a fair trial; (9) the prosecutor committed misconduct by making disparaging remarks about defendant; and (10) victim restitution fines are punitive and must be determined by the trier of fact rather than the trial court. We reject defendant's claims and affirm the judgment in its entirety.

## FACTUAL AND PROCEDURAL HISTORY

### A. The People's Case-in-chief

#### 1. Doe's Testimony

Doe was born in June 1997, and was 16 years old at the time of trial. Doe considered defendant to be her stepfather even though he was not married to her mother, V.C. Defendant began living with Doe and her family in Mead Valley when she was very young. Her first memory of him was when she was four or five years old.[4] Doe had a little brother who also lived with them. Doe's older sister, K.A., lived with them for some time period when Doe was young.

Initially, Doe did not want to explain the details of what happened to her. She insisted she already told her story numerous times. Doe was angry because she wanted her mother back.[5] Doe was not the kind of person who "speaks up for herself" and did not want to fight to get defendant in jail when it would not bring her mother back. It was not fair that her mother was found guilty but defendant still had not been found guilty.

Eventually, Doe indicated that defendant molested her in the living room, her mother's bedroom and the bathroom of their house. Doe stated that defendant touched her vagina with his hand. Defendant touched her when she was "five, six, seven, eight, nine, 10, 11, 12, 13." These assaults occurred approximately two times each week. Defendant usually touched her during the night when just she and her little brother were home and her mother was at work. Doe slept in the living room when she was five years old. K.A. slept in the second bedroom.

The first time she could remember defendant having sex with her was when she was five years old. She was in the bathroom and K.A. was in her

---

[4] Defendant was 56 years old at the time of trial.

[5] Doe's mother had pleaded guilty to child endangerment for her involvement in the case and had been deported to Mexico.

room. V.C. was not home. Doe used the bathroom. Defendant entered the bathroom and took her pants and underwear off. Defendant pulled down his own pants and underwear. Defendant put his penis in Doe's vagina.

Doe did not call out for K.A. when this happened and did not fight because she was five years old and did not know what was happening to her. Doe did not tell K.A. what happened to her because she was too young to know what was going on. Doe did not want to tell her mom because it was "embarrassing."

Sometime when she was between the ages of seven and nine, she had blood in her underwear. V.C. asked her about it. She did not tell V.C. what defendant was doing to her. Doe did not start her menstrual cycle until she was 12 years old.

Doe also indicated that defendant put his penis in her anus. It occurred in both his bedroom and the bathroom. She was "Young" when this happened and it happened more than one time. Doe would not say anything to him when this happened. These sexual assaults would happen at night while her mom was at work. He sodomized her at least twice each month. Defendant only put his penis in her vagina and anus.

Defendant oftentimes took her and her little brother to school. She would sit next to defendant in the front seat of his pickup truck. Defendant would touch her vaginal area and breasts over her clothes while they were driving. Doe's little brother would see defendant touch Doe; he knew that defendant was touching her inappropriately. As she got older, she would try to move his hands away from her but he would try again.

Doe did not want to have sex with defendant. He never hit her or forced her. When defendant molested Doe, he told her that they were just playing. When she was little she believed him.

Defendant never threatened her that if she told someone something bad was going to happen. She did not know why she had sex with defendant. Only once, when she was 11 or 12 years old, she cried. She cried because she was tired of being molested.

Doe indicated that the molestations stopped when she was 13 years old. She believed it was because V.C. was pregnant and stopped working nights. Also, before V.C. got pregnant, Doe started to stay at a friend's house after school because she did not want to go home.

Doe told her school counselor about the molestations on December 14, 2011. Doe finally told the counselor because V.C. gave birth to another baby,

a girl, in July 2011. Doe "didn't want the same thing to happen" to her little sister. Doe told the counselor that she could not go home because V.C. would "beat the shit" out of her. Doe thought that V.C. would think she was lying and would beat her up for going to the counselor and wasting V.C.'s time. The counselor called the police. Doe was placed in a foster home.

V.C. asked Doe when she was in elementary school if she was being molested by defendant. Doe was afraid and told her no.

V.C. was going to take Doe to the doctor because of the blood in her underwear. V.C. and defendant drove Doe to a clinic about a week after the blood was found in her underwear. However, defendant and V.C. fought outside and they never went in. Doe could not hate defendant because he had been her dad as long as she was alive.

### 2. V.C.'s Testimony

V.C.[6] was afraid to testify because she did not want to receive additional jail time. V.C. recalled being summoned to Doe's school. When she arrived, police were at the school. V.C. was questioned about sexual abuse committed by defendant against Doe. V.C. suspected prior to that day that defendant may be molesting Doe. She had seen blood in Doe's underwear when Doe was 10 years old, which was prior to her getting her period. When V.C. asked Doe, she "blushed" like she was scared. V.C. did nothing. She did ask defendant one time if he was "doing something wrong at home" and he said no. Defendant always told her if there were ever any problems with the police, she would get deported.

On another occasion, V.C. found blood in the toilet. This also made her suspect that something may be going on between defendant and Doe. V.C. at some point stopped working nights in order to help protect the girls. K.A. told her one time that something had happened with defendant but K.A. never repeated it. V.C. was afraid to call the police. V.C. suspected the abuse for four years prior to Doe telling the school counselor.

### 3. K.A.'s Evidence Code Section 1108 Testimony

K.A. was born in October 1993, and was 20 years old on the day of trial. Defendant was not her father. K.A. recalled that defendant began living with V.C. and the children when K.A. was eight or nine years old.

When K.A. was 11 years old, V.C. started working nights. When K.A. was 14 years old, K.A. was in the kitchen and defendant started touching her. He

---

[6] V.C.'s testimony from the preliminary hearing was read to the jury because she was an unavailable witness; she had been deported and could not be located in Mexico.

first hugged her and tried to kiss her. She backed away. He was able to kiss her cheek. K.A. went outside.

Later that same night, K.A. took a shower. Doe and her little brother were sleeping. After her shower, she put on her pajamas. As she walked back to her room, defendant came out of his bedroom. Defendant was wearing only boxers or shorts. Defendant grabbed K.A. by the arm and pulled her into his room. K.A. resisted but defendant threatened to report that V.C. was in the country illegally. Defendant threw K.A. on the bed and pulled down her pants. He put his penis in her vagina. K.A. felt awful and wanted to die. This happened a "couple" times.

K.A. eventually ran away from home when she was 15 years old; K.A. told V.C. that defendant tried to touch her but did not tell her they had sex. V.C. never did anything about it. K.A. never told anyone else.

On December 14, 2011, K.A. was contacted by the police while she was living at her boyfriend's house. The police came to her house that night. When asked if she had been molested by defendant, she responded only that he touched her over her clothes. She did not want to say, in front of her boyfriend, that she and defendant had sex. K.A. also did not say that she and defendant had sex when she later spoke with an investigator because V.C. was in custody and she did not want to make it worse for her.

The first time K.A. stated she and defendant had sex was at the trial. She had not told the prosecutor prior to her testimony at trial.

B. *Defense*

Ever Valentin lived with defendant from 1989 to 1997. Valentin had four children. The children lived in Mexico but spent some time with defendant. Two of Valentin's children, including a girl, lived with defendant and her for two years. The girl was 18 years old at the time. Defendant never did anything sexually inappropriate toward her. Valentin had never seen defendant be inappropriate with a minor girl.

Juan Carlos Zenteno met defendant at work and had known him for approximately 10 years. Zenteno described defendant as being a kind, attentive and nice person. Zenteno had four children, including a daughter. Defendant never behaved inappropriately around them. Defendant did not have a reputation for liking young children.

Riverside County Sheriff's Deputy Maurice Daugherty responded to the high school to investigate Doe's allegations of sexual abuse. Doe told Deputy

Daugherty that defendant started molesting her when she was six years old, not when she was five years of age. She described the first time that defendant molested her; she had been sleeping on the living room couch. She woke up and defendant was on top of her. She described no sexual offenses that occurred in the bathroom. She described the sexual offense as defendant putting his penis in her vagina. She did not disclose any incidents of anal sex.

Doe was subjected to Riverside County Child Assessment Team (RCAT) interviews on December 15, 2011, and December 20, 2011. Detective Thomas Salisbury observed both interviews. Doe stated that defendant first had sex with her when she was six years old and the last time was when she was 12 years old. Doe stated that the first time that he had sex with her was on the living room couch. She described the incident as defendant putting his "dick" inside her vagina. Doe stated the sex always occurred on the living room couch. Defendant never said anything to her before having sex with her. She never described an incident in the bathroom. Doe never stated that defendant had anal sex with her.

Doe described four distinct times that defendant had sex with her: the two times when she was the ages of six and 12; one time when she was seven years old when the sex lasted the longest; and one time when she was nine years old, she saw his penis. Doe "estimated" that she was six years old when the first incident happened.

## DISCUSSION

### A. *Motion to Strike Doe's Testimony*

Defendant contends that the trial court should have granted his motion to strike Doe's direct testimony because he was unable to conduct a meaningful cross-examination due to her refusal to respond to trial counsel's questions.

#### 1. *Additional Factual Background*

Prior to trial, the prosecutor informed the trial court that Doe was hostile toward her because Doe blamed the prosecutor for V.C. getting deported back to Mexico. At the beginning of Doe's testimony, a break was taken because Doe was crying. During the break, Doe was advised by the trial court that she had to testify. Doe asked what would happen if she walked out of court. She was told she would probably be arrested. Doe asked if she could answer the questions in another room where the jury would not be present. The trial court advised her that she had to testify in front of the jury and defendant. The prosecutor then asked Doe if she was ready to resume testifying, and she

responded "No." The prosecutor asked her, "Will there be a time today that you will be ready, or should I just go ahead." Doe responded, "No." Questioning resumed.

Thereafter, the prosecutor asked Doe to move her microphone closer to her mouth so everyone could hear her, and she responded, "I don't care." The prosecutor asked Doe why she was so angry; Doe responded that she already told the prosecutor what defendant had done to her. After another sidebar, the prosecutor asked Doe if she was going to answer the questions about the different rooms in which the sexual assaults occurred. She responded, "No." The prosecutor's request to treat Doe as a hostile witness was granted.

Doe then testified that another incident occurred while she was sleeping on the couch. Doe was again evasive and did not want to answer. She thought it was "dumb" and "embarrassing." Doe explained also that she was very shy and did not like to talk. She then refused to answer as to what happened on the couch. She reiterated that the questions were "dumb," that she did not remember "shit," and she said, "What do you expect a kid to remember? Especially things that I went through? Stop talking to me already."

Another sidebar was taken. The trial court admonished Doe not to get angry. The trial court explained for the record that Doe slapped the witness stand and had turned around to face the wall when she was angry. The trial court advised Doe that she just needed to testify for at most two days and then she would be done. Doe told the trial court that she would not return the following day. The trial court advised Doe that if she said she was not coming back, she would not be allowed to leave that night.

The trial court determined that it would recess until the following day to allow Doe to compose herself. Doe refused to calm down. The trial court was forced to remand her to juvenile detention facilities because of her refusal to appear. Doe responded, "Stupid. I fucking hate my life. Motherfucking be getting molested right now than being here. I don't know why I even said anything."

The following day, Doe assured the trial court that she would respond to the questions. Doe was responding to questions so the trial court reversed its order that she was a hostile witness. She testified as set forth in the statement of facts, *ante*.

During cross-examination, Doe denied she ever said prior to trial that the molestations started when she was six years old; she was five. She also never told anyone that the molestations stopped when she was 12 years old. Thereafter, Doe continuously stated that she could not remember what she

told anyone prior to trial. She denied that looking at the transcripts of her RCAT interviews would help her recall what she had said. Doe admitted that she was very angry during the RCAT interviews and was yelling at the interviewer. She did not know if she only said that she was molested in the living room and never said anything about the bathroom.

Doe admitted the first time that she said defendant called it a game was at trial. She did not know if her testimony at trial was the first time she said he sodomized her. She continued to insist she did not remember what she told the RCAT interviewer.

At the end of Doe's testimony, defendant's counsel moved to strike her testimony, arguing that he did not have an opportunity to effectively cross-examine her. Defense counsel argued that Doe refused to look at transcripts of her prior testimony and she was not truthful about forgetting her prior testimony. The trial court felt that Doe had not changed her testimony. Further, her attitude and credibility were for the trier of fact to determine. The trial court felt that her responses were sufficient. Whether Doe was truthful in saying that the transcripts would not refresh her memory was for the jury to decide. The trial court did not believe defendant was prevented from cross-examining her.

During defendant's Evidence Code section 1118.1 motion, defense counsel argued due process required that all of the counts be dismissed. The victim's failure to articulate the acts in a reasonably detailed manner and her failure to answer questions warranted dismissal. The trial court felt that Doe had calmed down enough the second day to give appropriate testimony. Further, the jury could decide the credibility of Doe.

### 2. *Analysis*

**(1)** Cross-examination is " ' "the greatest legal engine ever invented for the discovery of truth" ' [citations]." (*Fost v. Superior Court* (2000) 80 Cal.App.4th 724, 733 [95 Cal.Rptr.2d 620] (*Fost*).) Cross-examination is "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." (*Pointer v. Texas* (1965) 380 U.S. 400, 405 [13 L.Ed.2d 923, 85 S.Ct. 1065].) "Because it relates to the fundamental fairness of the proceedings, cross-examination is said to represent an 'absolute right,' not merely a privilege [citations], and denial or undue restriction thereof may be reversible error. [Citation.]" (*Fost*, at p. 733.)

"Where a witness refuses to submit to cross-examination, or is unavailable for that purpose, the conventional remedy is to exclude the witness's testimony on direct." (*Fost, supra,* 80 Cal.App.4th at p. 735.) Moreover where a

witness "frustrates" cross-examination by declining to answer some or all of the questions, the court may strike all or part of the testimony. (*People v. Price* (1991) 1 Cal.4th 324, 421 [3 Cal.Rptr.2d 106, 821 P.2d 610].) The decision whether to strike the direct examination, or a partial strike of the testimony, of a witness who does not submit to cross-examination is left to the discretion of the trial court. (*People v. Reynolds* (1984) 152 Cal.App.3d 42, 47–48 [199 Cal.Rptr. 379].)

Defendant characterizes Doe's testimony on cross-examination as a refusal to answer questions. However, the People argue nothing in the record supports that Doe's lack of memory was deliberate or feigned to evade answering defense counsel's questions.

"[A] witness with genuine memory loss is considered available for a defendant's cross-examination. [Citation.]" (*People v. Gunder* (2007) 151 Cal.App.4th 412, 419 [59 Cal.Rptr.3d 817], called into doubt on another point in *People v. Moore* (2011) 51 Cal.4th 386 [121 Cal.Rptr.3d 280, 247 P.3d 515].) "The circumstance of feigned memory loss is not parallel to an entire refusal to testify. The witness feigning memory loss is in fact subject to cross-examination, providing a jury with the opportunity to see the demeanor and assess the credibility of the witness . . . ." (*Gunder*, at p. 420.)

Here, the record supports that Doe was clearly traumatized and emotionally scarred. Most of the times that Doe stated she "did not remember" or "did not know" involved her inability to recall what she said during the first and second RCAT interviews. She stated she was mad when the first interview occurred. She also stated that she was trying to forget everything that had happened to her.

Moreover, she was evasive with both the prosecutor and defense counsel. It was clear she did not want to recall the details of the molestations. The trial court did not abuse its discretion by finding that her statements on cross-examination that she did not remember, or did not know, were truthful statements and not a refusal to respond. Further, even if she was not truthful and was feigning ignorance, the jury clearly could determine her credibility based on her demeanor and actions on the stand. The jury was instructed, "If you do not believe a witness's testimony that he or she no longer remembers something, that testimony is inconsistent with the witness's earlier statement on that subject."

There was not a complete or partial refusal by Doe to be subjected to cross-examination that required exclusion of her direct testimony. Further, the jury was well aware of the inconsistencies in Doe's pretrial and trial testimony. Defendant presented the testimony of Deputy Daugherty, who

detailed all of the inconsistencies between Doe's pretrial and trial statements. Further, Detective Salisbury, the officer who observed Doe's RCAT interviews, testified as to the inconsistencies between Doe's trial testimony and what she stated during the interviews. While it is true defendant was unable to fully confront her about these inconsistencies, the issues were before the jury and defendant was not completely foreclosed of his rights of confrontation. The trial court did not abuse its discretion by refusing to strike Doe's testimony.

**B.  *Failure to Instruct with Lesser Included Offense of Unlawful Sexual Intercourse****

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**C.  Griffin *Error***

Defendant contends K.A.'s testimony that defendant knew what he had done to her but remained silent in court violated his Fifth Amendment right to remain silent, e.g. *Griffin* error.

### 1.  *Additional Factual Background*

During redirect, the prosecutor asked K.A. why she never previously reported that defendant had sex with her, only that he inappropriately touched her. K.A. explained it was difficult to talk about and that her life had been destroyed because of it. The prosecutor asked K.A., "So what made you decide to tell us about it today?" K.A. responded, "Because I just don't like the fact that he knows what he did. It wasn't just me, it was also my sister. And he still wants to sit here and deny everything." There was no objection.

### 2.  *Analysis*

Defendant has waived appellate review of this issue because he did not object to the alleged instance of *Griffin* error in the trial court. (*People v. Lancaster* (2007) 41 Cal.4th 50, 84 [58 Cal.Rptr.3d 608, 158 P.3d 157] [defendant's failure to object waives *Griffin* error].) Anticipating we would find that he has waived the claim, defendant argues that he received ineffective assistance of counsel due to the failure to object.

■  In order to show ineffective assistance of counsel, defendant has the burden of establishing that (1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional

*See footnote, *ante*, page 991.

norms; and (2) the deficient performance resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688 [80 L.Ed.2d 674, 104 S.Ct. 2052].)

In *Griffin, supra,* 380 U.S. 609, the Supreme Court of the United States stated, "We take that in its literal sense and hold that the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." (*Id.* at p. 615, fn. omitted.)

■ Defendant concedes there is no California authority supporting his claim that a *witness's* testimony concerning a defendant testifying constitutes *Griffin* error. Defendant cites to two Fifth Circuit Court of Appeals decisions to support his claim. He cites to *U.S. v. Sylvester* (5th Cir. 1998) 143 F.3d 923, 929, which held that the "Fifth Amendment prohibits a witness from commenting on a defendant's failure to testify in a criminal trial." He cites to *U.S. v. Rocha* (5th Cir. 1990) 916 F.2d 219, 232, which also held that the, "Fifth Amendment prohibits a trial judge, a prosecutor or a witness from commenting upon a defendant's failure to testify in a criminal trial." (Fn. omitted.) Lower federal court decisions on federal questions are persuasive authority, but they are not binding on California Courts of Appeal. (*People v. Zapien* (1993) 4 Cal.4th 929, 989 [17 Cal.Rptr.2d 122, 846 P.2d 704].)

Initially, as to defendant's ineffective assistance of counsel claim, reasonably competent counsel would not have raised a *Griffin* error objection to K.A.'s statements. There is no California authority supporting defendant's claim. Trial counsel was not ineffective in failing to make a futile objection.

■ Moreover, we are not persuaded by the Fifth Circuit Court of Appeals cases relied upon by defendant, and therefore, he cannot show prejudice. In both of these cases, the circuit court cites to *Griffin,* without a pinpoint cite, for authority that a witness's comment can constitute *Griffin* error, but *Griffin* does not stand for that proposition. (*U.S. v. Rocha, supra,* 916 F.2d at p. 232; *U.S. v. Sylvester, supra,* 143 F.3d at p. 929.) We decline to extend *Griffin* beyond its plain language to include a witness's testimony. There was no *Griffin* error.

D.–G.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 991.

## DISPOSITION

We affirm the judgment.

Hollenhorst, Acting P. J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 16, 2015, S229676.