Filed 12/22/23  P. v. Alfaro CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D080610 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS315944 ) |
| JOSE LUIS ALFARO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Enrique E. Camarena, Judge.  Affirmed.

Sam McGovern, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Seth M. Friedman,  Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

Appellant, Jose Luis Alfaro, seeks reversal of his judgment for corporal injury to a spouse and infliction of great bodily injury.  He claims the court

improperly admitted evidence and his trial counsel was deficient. We disagree and affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In the summer of 2020, appellant and A.A.[1] were in the process of getting divorced, but they continued to live together in the same home. In July 2020, A.A. noticed that appellant was going to the same places as she was, and she discovered that appellant put a tracking device on her vehicle. Although she reported it to the police, she declined to press charges or seek a restraining order because she was concerned about alimony and did not want appellant to lose his job. Shortly thereafter in mid-August, appellant threatened to put a bullet in A.A.'s head.

Following an argument on August 22, 2020, appellant struck A.A. above her right eye, causing a laceration. A.A. ran out of the house; yelling for her neighbors to call the police. When officers responded, A.A. confirmed to them that appellant struck her.

A.A.'s trial testimony portrayed the August 22nd incident differently. She testified that she did not remember the exact details, and in hindsight she did not believe appellant punched her. After A.A. testified, the court admitted body-worn camera footage and testimony from the responding officer, as well as expert testimony that domestic violence victims often recant. It also admitted evidence that appellant tracked A.A. and instructed the jury that it could consider that evidence for propensity purposes under Evidence Code section 1109.

The jury convicted appellant of corporal injury to a spouse (Pen. Code, § 273.5, subd. (a)) and infliction of great bodily injury (Pen. Code, § 12022.7,

---

[1] Pursuant to the California Rules of Court, rule 8.90(b)(4), we use initials to protect the victim's identity.

subd. (e)).  The trial court suspended imposition of appellant's sentence and granted him three years' probation.

On appeal, appellant contends his conviction should be reversed because:  (1) the court erred in admitting the tracking evidence for propensity; (2) his counsel was ineffective for failing to object to the body-worn camera footage; (3) his counsel was ineffective for failing to object to hearsay statements elicited from A.A.; and (4) cumulative error.  We disagree and affirm the judgment.

## III.  DISCUSSION

*A.  Tracking Evidence.*

Appellant first contends the trial court erred by admitting the tracking evidence under Evidence Code section 1109.  While no objection was made during trial,[2] the matter is reviewable through appellant's claim of ineffective assistance of counsel.  To prevail on this claim, appellant must "show that counsel's performance was deficient" and demonstrate "that the deficient performance prejudiced the defense."  (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)  As to deficient performance, appellant "must show that counsel's representation fell below an objective standard of reasonableness."  (*Id.* at p. 688.)  To prove prejudice, appellant needs to demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  (*Id.* at p. 694.)

Evidence Code section 1109 allows admission of a defendant's other acts of domestic violence for the purpose of showing a propensity to commit

---

[2]    The prosecution initially sought to admit the tracking evidence for impeachment, and when the court independently found it admissible under Evidence Code section 1109, appellant's counsel did not object.

such crimes. (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1232–1233.) Although the tracking evidence was admitted under section 1109, it was also admitted for impeachment, as it showed A.A. declined legal action in response to the tracking because that might cost appellant his job and impact her alimony.

Appellant does not dispute that the tracking evidence was admissible for impeachment and nor do we. The only difference Evidence Code section 1109 made was the instruction to the jury, that it could use the tracking evidence to find that appellant was likely to commit the charged offense. However, it is not reasonably probable the outcome would have been different absent that instruction because the other evidence of guilt was strong.

As discussed in more detail below, when A.A. was interviewed by the responding officer, she indicated that appellant intentionally hit her in the face with his fist. This was admitted through body-worn camera footage and testimony from the responding officer. Photographs of A.A. from the night of the incident and the following week were also admitted, which showed bruising around her eye and a deep laceration on her eyebrow that required three stitches. The injuries depicted were consistent with A.A. being punched in the eye, and contradicted appellant's argument that A.A.'s injury was caused by accidental contact or self-defense. Although A.A. claimed at trial that she did not remember the exact details and that in hindsight she did not believe appellant punched her, that testimony was rebutted. It was contradicted by the responding officer's testimony and the body-worn camera footage obtained shortly after the incident occurred, A.A. stated that she did not pursue further action for this incident and the tracking incident based on financial consequences, and there was expert testimony that domestic violence victims often recant for various reasons, including finances. Finally,

4

a separate incident of domestic violence was admitted under Evidence Code section 1109, which was appellant's threat to put a bullet in A.A.'s head a week before the incident in this case, and appellant does not challenge the use of that evidence for propensity purposes.

Based on all the evidence, there is no reasonable probability that appellant would have been acquitted without the propensity instruction for the tracking evidence. So even if it was a mistake for appellant's counsel to not object to that instruction, there was no resulting prejudice, and thus no ineffective assistance of counsel.

### B. Body-Worn Camera Footage.

Appellant also claims his counsel was ineffective for failing to object to the body-worn camera footage on several grounds. As explained below, the body-worn camera footage was admissible, so the failure to object does not establish ineffective assistance of counsel. (See, e.g., *People v. Noriega* (2015) 237 Cal.App.4th 991, 1003 ["Trial counsel was not ineffective in failing to make a futile objection."].)

#### 1. Inconsistent Statements.

Appellant argues A.A.'s statements in the body-worn camera footage were inadmissible hearsay because they did not meet the exception for inconsistent statements. He claims the statements were not actually inconsistent with A.A.'s trial testimony, and her failure to remember details at trial was not evasive.

Despite the general hearsay rule, a witness's out-of-court statement that is inconsistent with his or her trial testimony is admissible. (*People v. Mataele* (2022) 13 Cal.5th 372, 413; Evid. Code, § 1235.) The test is inconsistency in effect, rather than contradiction in express terms. (*Mataele*, at p. 413.) Failure to remember prior statements is not generally

5

inconsistent, but inconsistency is implied when the claimed lack of memory amounts to deliberate evasion.  (*Id.* at p. 415; *People v. Johnson* (1992) 3 Cal.4th 1183, 1219–1220.)  If there is a reasonable basis for concluding lack of memory is evasive and untruthful, admission of the prior statements is proper.  (*Mataele*, at p. 415.)

In the body-worn camera footage, A.A. described appellant's conduct through gestures, making a fist with her right hand and motioning toward the right side of her face.[3]  She was asked if appellant "intentionally hit" her, and she responded, "Yes."  When the officer stated, "and then – . . . during the argument, swings on you – ," A.A. responded, "Yeah, I mean I pushed him first but – yes."

On the other hand, A.A. testified that looking back on the incident, she did not believe she was punched.  She also testified that she did not know how she got hit, she could not see what appellant was doing, appellant's hands were open, appellant was not advancing towards her, and she and appellant mutually put their hands up to get away from each other.  This contradicts A.A.'s statements in the body-worn camera footage, making that footage admissible as prior inconsistent statements.

A.A. also testified that she did not remember certain details, such as telling officers that appellant intentionally punched her or appellant's exact actions.  She testified that she did not remember describing a motion with a closed fist coming toward her face, later stating she did not remember that exactly, and ultimately stating, "That's what they said then that's what I said."  As described above, there was evidence that A.A. did not want to

---

3    Nonverbal conduct intended to convey a particular meaning is considered a statement for purposes of the hearsay rule.  (*People v. Covarrubias* (2016) 1 Cal.5th 838, 886.)

pursue this or the tracking incident for financial concerns, and that domestic violence victims often recant for that reason. This is a sufficient basis to find that A.A.'s claimed lack of memory was evasive and provides another basis to admit the prior inconsistent statements.[4]

### 2. Weighing Under Evidence Code Section 352.

Appellant argues his counsel should have objected to the body-worn camera footage under Evidence Code section 352 because A.A.'s alcohol consumption and bias against appellant made her statements unreliable.

Evidence Code section 352 states "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

The probative value of the footage was high because it depicted the victim and only witness's account of the incident near the time it occurred. The footage was short, and it was not inflammatory or likely to mislead the jury because it was played after photographs of A.A.'s injuries had already been admitted, and it did not depict anything other than a description of the charged conduct. The footage was also probative of A.A.'s credibility, which was an important issue. The reliability of A.A.'s statements was for the jury to decide, and the footage allowed the jury to assess appellant's concerns because it depicted A.A.'s demeanor, her admission of consuming alcohol, and her stated hatred of appellant. Accordingly, the evidence was admissible under Evidence Code section 352.

---

[4] Because the body-worn camera footage was properly admitted as inconsistent statements, we do not address appellant's separate claim that it did not qualify under the hearsay exception for spontaneous statements.

### 3. Lay Opinion Testimony.

Appellant argues the body-worn camera footage contained an improper lay opinion regarding his state of mind because A.A. said yes when asked if appellant "intentionally hit" her.

Lay opinion testimony is allowed when rationally based on the witness's observation and helpful to a clear understanding of the witness's testimony. (Evid. Code, § 800.) "A lay witness generally may not give an opinion about another person's state of mind, but may testify about objective behavior and describe behavior as being consistent with a state of mind." (*People v. Sanchez* (2016) 63 Cal.4th 411, 456.) Such a lay opinion is appropriate " 'when a witness's impression of what he or she observes regarding the appearance and demeanor of another rests on "subtle or complex interactions" between them [citation] or when it is impossible to otherwise adequately convey to the jury the witness's concrete observations.' " (*Ibid.*)

A.A. initially described appellant's behavior to the responding officer as follows: " . . . he's just screaming at my face . . . so I was like, get away from – um – get away. I was like, yeah, just go – . . . And then just –." At that point, A.A. made a fist with her right hand and motioned toward the right side of her face. After discussing what led to the incident, the responding officer then asked, "Okay, so he intentionally hit you – we have to just get this straight –," and A.A. responded, "Yes."

The officer used the adjective "intentionally" to help her understand A.A.'s description of appellant's movements during an argument that escalated quickly. When A.A. responded "[y]es," she was describing appellant's behavior as being consistent with a particular state of mind, and

8

that description was rationally based on her observation of appellant's movements. This was an admissible lay opinion.

Appellant also contends that the use of "intentionally" was tantamount to an improper opinion of guilt. " '[O]pinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact. To put it another way, the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt.' " (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 77.) On the other hand, "Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805.) While "intentionally" embraces the element of willfulness, it was otherwise admissible to help understand A.A.'s description of appellant's behavior as discussed above. The charged offense requires other elements, including a specific relationship between the defendant and victim, causation, and a traumatic condition. (Pen. Code, § 273.5 subds. (a), (b).) A.A.'s response to the officer, which only relates to one element and was otherwise admissible, falls short of an opinion of guilt.

For the reasons discussed above, appellant has not shown that the body-worn camera footage was inadmissible, which defeats his claim of ineffective assistance of counsel. We also note the specific reason why appellant's counsel did not object is unknown. This means deficient performance can only be established if the failure to object had no conceivable tactical purpose. (*People v. Arredondo* (2019) 8 Cal.5th 694, 711.) The use of body-worn camera footage in criminal trials is common, and its absence might lead to negative inferences from the jury. The footage also includes A.A.'s admissions that alcohol was involved, she hated appellant, and she pushed appellant first. This establishes potential tactical purposes for not

9

objecting, which is a separate reason that appellant's counsel was not ineffective.

C.  *Alleged Improper Questioning.*

Appellant argues the prosecution improperly elicited four statements from A.A. and his counsel should have objected.  The exchanges proceeded as follows:

> [PROSECUTOR]:  Do you remember telling Officer Emerson that he had shown up and said, and I'm quoting, "My wife is a fucking whore"?  [Contested statement number one.]
>
> [A.A.]:  I don't remember him saying that, but maybe.
>
> [PROSECUTOR]:  Maybe that's what he said?
>
> [A.A.]:  Maybe.  Yeah.  I don't remember.
>
> [PROSECUTOR]:  Do you remember telling Officer Emerson that he was also making comments about, "You know, she's mine"?  [Contested statement number two.]
>
> [A.A.]:  "Oh, she's mine"?
>
> [PROSECUTOR]:  "You know she's mine"?
>
> [A.A.]:  I don't understand that comment.
>
> [PROSECUTOR]:  Do you remember explaining that to Officer Emerson when they were taking this report that sometimes the defendant – and I'm using your words – "Like, he will run up at you.  Like, you think you are going to get knocked out, and then he doesn't hit you?"  [Contested statement number three.]
>
> [A.A.]:  I don't remember that.
>
> [PROSECUTOR]:  You don't remember saying that?

[A.A.]: I don't remember much from – I fogged everything. I don't remember my exact words. I'm sorry.

[¶] . . . [¶]

[PROSECUTOR]: You actually made a comment to them that how many people have been killed with a restraining order, right? [Contested statement number four.]

[A.A.]: Yes, I think they are useless. A lot of things are useless, but that's my opinion, which isn't valid at this point.

[PROSECUTOR]: Were you afraid of him in July of 2020?

[A.A.]: No.

[PROSECUTOR]: Okay. So you didn't want a restraining order?

[A.A.]: No.

[PROSECUTOR]: Why did you make that report then?

[A.A.]: For documentation for the divorce.

For the first three contested statements (identified above) A.A. stated she did not remember or understand, so there was no evidence that these statements were made. The fourth contested statement led to testimony that A.A. was not afraid of appellant and that she may have reported a prior incident to gain an advantage in their divorce—a response which could have benefited appellant. Under these circumstances, the failure to object did not harm appellant. There are also potential tactical reasons for not objecting, as that could have highlighted the questioning and made it seem more significant.

11

Appellant's claim that this line of questioning inflamed the jury is also not convincing. The contested statements are not particularly inflammatory when compared to the charged offense, and the trial court instructed the jury to not consider questions as evidence.

Because the lack of an objection was reasonable and did not prejudice appellant, ineffective assistance of counsel has not been shown.

*D. Cumulative Error.*

Appellant argues the combined effect of the errors he identified requires reversal. We disagree. The only potential error was counsel's failure to object to the use of the tracking evidence for propensity. That did not affect the outcome of the trial, and no other errors have been identified.

## IV. DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

DATO, J.

BUCHANAN, J.