Filed 3/30/16 Unmodified opinon attached

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D069277 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVI1101450) |
| LEONEL LOPEZ REYES, | MODIFICATION ORDER |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The above-referenced opinion, filed March 30, 2016, is modified to correct the

Superior Court Case number in the heading so that the heading now reads:

"(Super. Ct. No. FVI1101450)"

**There is no change in the judgment.**

BENKE, Acting P. J.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LEONEL LOPEZ REYES,<br><br>    Defendant and Appellant. | D069277<br><br><br><br>(Super. Ct. No. FVI110450) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Eric M. Nakata, Judge.  Affirmed as modified and remanded with directions.

Jerome P. Wallingford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Stacy Alicia Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Leonel Lopez Reyes of forcible oral copulation (Pen. Code,[1] § 288a, subd. (c)(2); count 1), forcible rape (§ 261, subd. (a)(2); count 2), lewd acts upon a child under the age of 14 (§ 288, subd. (a); count 3), and first degree burglary (§ 459; count 6). The jury found true allegations that the crimes of counts 1 and 2 occurred during the commission of a first degree burglary. (§ 667.61, subd. (b), (e).) The jury also found true allegations under section 667.61, subdivision (*l*) that Reyes committed the crimes of counts 1 and 2 during the commission of a burglary with the intent to commit those crimes, and that the victim, Daniela R., was age 14 or older but under the age of 18 (§ 667.61, subd. (l)).[2] The trial court sentenced Reyes to eight years plus one consecutive term of life without the possibility of parole, consisting of life without the possibility of parole for the special findings under section 667.61, subdivision (*l*), the upper term of eight years for the count 3 offense, a concurrent midterm of four years for count 6, and 15-year-to-life terms on counts 1 and 2 pursuant to section 667.61, subdivisions (b) and (e) stayed under section 654.

Reyes contends the prosecutor committed prejudicial misconduct by arguing for the first time in rebuttal the relevance of evidence that Daniela was gay on the issue of consent, and also by explaining the reasonable doubt standard in such a way as to dilute the People's burden of proof in violation of the Sixth Amendment. Reyes further

---

[1] Statutory references are to the Penal Code unless otherwise specified.

[2] The jury found not true multiple victim allegations appended to counts 1 and 2. The jury did not reach a verdict on count 5 as to a different alleged victim, Shirley R., and that count was dismissed on the prosecutor's motion. Count 4, also as to Shirley R., was dismissed on a defense motion.

contends his sentence of life without the possibility of parole for committing two forcible sex offenses violates the proscriptions in the federal and California Constitutions against cruel and unusual punishment, and his counsel was prejudicially ineffective for failing to object on this ground under the California Constitution. In a supplemental brief, Reyes finally contends the trial court sentenced him under section 667.61, subdivision (*l*) in counts 1 and 2 under the mistaken belief it had no discretion to impose a lesser sentence. He asks this court to set aside the sentences in counts 1 and 2 and remand the case for the trial court to exercise its discretion to either strike or not strike the findings made under that subdivision.

The People ask that we order the trial court to amend the abstract of judgment to reflect the jury's true findings on the allegations under section 667.61, subdivision (*l*) attached to counts 1 and 2 as well as the court's oral pronouncement of judgment on those counts, and to indicate that Reyes was sentenced under that section. Reyes agrees, and we conclude the abstract of judgment should be modified to reflect those changes. As so modified, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

Because Reyes does not challenge the sufficiency of the evidence of his convictions, we briefly summarize his offenses. Where necessary to detail the facts relevant to Reyes's appellate contentions or to determine prejudice, we do so at that point in the opinion.

From late 2008 to about the middle of 2010, Daniela lived with her mother and sister in a house that they shared with Reyes, Reyes's wife and three children. In 2010, the families moved into separate apartments. Reyes at times borrowed from and repaid money to Daniela's mother.

In June 2011, Reyes owed $100 to Daniela's mother, who expected him to repay it. On the afternoon of June 22, 2011, Daniela was home when Reyes knocked at their door. She hesitated and did not want to open the door because of an incident that had occurred in their prior house: Reyes had pulled her off a couch where she had been sitting with his son and Daniela thought he was just playing a game, but he started to put his hand inside her shorts and underwear. Daniela nevertheless opened the door for Reyes, who told her he was there to repay money. She opened the outside security door, took the money, and started to close the door but Reyes pulled it open and walked inside. Reyes closed all of the doors while Daniela tried to back away. When she backed into the wall, Reyes proceeded to pull Daniela toward him. He eventually picked Daniela up, put his face between her breasts, then pushed her onto a couch where he tried to kiss her, removed her shorts and underwear, orally copulated her while holding her arms down, and had intercourse with her. Afterwards, Reyes gave Daniela $20, told her not to tell anyone, and left. Crying and having difficulty speaking, Daniela eventually related what had happened to a friend who told her father, who told Daniela's mother.

A sexual assault examination showed evidence of Reyes's sperm consistent with his DNA profile in Daniela's vagina. A physical examination of Daniela was within

4

normal limits; it revealed no sex assault-related injuries and therefore there were no findings.

*Defense Evidence*

Reyes testified that on June 22, 2011, after he gave Daniela the money he owed her mother, Daniela wanted to "play" and jumped on his back when he was about to leave. He claimed she removed her shorts and underwear and they had consensual oral and vaginal sex. Reyes denied holding Daniela's hands down during the acts. He testified that while he knew having sex with someone who was 14 years old was against the law in the United States, it was not a problem in Mexico and he did it because he was sexually attracted to her. Reyes admitted lying to police about his whereabouts that afternoon.

DISCUSSION

I. *Claims of Prosecutor Misconduct*

Reyes complains that the prosecutor committed prejudicial misconduct in two separate instances. First, he contends she engaged in misconduct when she raised in her rebuttal closing argument for the first time the fact Daniela was gay so as to suggest Daniela would not consent to have sex with him. He maintains the prosecutor did not discuss consent in her argument in chief, but waited until rebuttal in order to make it impossible for his defense counsel to respond to this contested issue. He argues this conduct violated both federal and state Constitutions and rendered the trial fundamentally unfair, requiring reversal under the *Chapman* (*Chapman v. California* (1967) 386 U.S. 18) standard of harmless error.

5

Second, Reyes contends the prosecutor committed misconduct by misstating the beyond a reasonable doubt standard in such a way that tended to reduce the prosecution's burden of proving the charged offenses.  He maintains this error, combined with the other instance of misconduct, cumulatively resulted in prejudice to him because they " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' "

A.  *Standard of Review*

" ' " 'A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process.  Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury.' " ' " (*People v. Charles* (2015) 61 Cal.4th 308, 327.)  " ' "A defendant's conviction will not be reversed for prosecutorial misconduct" that violates state law, however, "unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct." ' [Citation.]  Bad faith on the prosecutor's part is not a prerequisite to finding prosecutorial misconduct under state law.  [Citation.]  In fact, our Supreme Court has stated, ' "[T]he term prosecutorial 'misconduct' is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind.  A more apt description of the transgression is prosecutorial error." ' " (*People v. Lloyd* (2015) 236 Cal.App.4th 49, 60-61.)

B.  *Claim of Misconduct in Arguing in Rebuttal Closing That Daniela Was Gay and Therefore Did Not Consent*

      1.  *Background*

During Daniela's cross-examination, defense counsel asked about Daniela's relationship with her mother, to which Daniela responded it was good "about certain things" but not others given her mother's different opinions.  Defense counsel pressed the issue, eliciting Daniela's admission that she was gay, and her testimony that she did not think that was something her mother wanted to know about.  Defense counsel then sought to question Daniela about what she meant by earlier testimony concerning her discussion with friends about "how [she] wanted it to happen," but the prosecutor objected on grounds of the rape shield law[3] that the questioning was "[g]etting into her sexual orientation" and "how she wants sex to happen."  The court sustained the objection, ruling the evidence's probative value was outweighed by prejudice and undue consumption of time under Evidence Code section 352.

---

[3]    The rape shield law had been raised in one of the People's pretrial evidentiary motions.  "Under California's rape shield law, specific instances of a complaining witness's sexual conduct are not admissible to prove consent by the complaining witness in a prosecution for specified sex offenses.  [Citation.]  Such evidence may be admissible, though, when offered to attack the credibility of the complaining witness, provided that its probative value outweighs the danger of undue prejudice and the defendant otherwise complies with the procedures set forth in Evidence Code section 782."  (*People v. Fontana* (2010) 49 Cal.4th 351, 354.)  Because counsel agreed there was no evidence on that point, the trial court did not rule on the prosecutor's motion.  Though the People address whether the prosecutor committed misconduct by violating any ruling under the rape shield law, Reyes only contends that the misconduct was the prosecutor arguing for the first time in rebuttal Daniela's lack of consent based on her sexual identity.

7

During the People's closing arguments, the prosecutor pointed out to the jury that for purposes of counts 1 and 2, forcible oral copulation and forcible rape, one of the elements was that the victim did not consent. She then argued, "So what do we know from Daniela? Daniela told us that the defendant orally copulated [her] forcefully. She said that she didn't want to have any sexual relations with him. She told him, 'No.' She told him to leave. She told him, 'Stop.' She was not a willing active participant in the act of oral copulation." The prosecutor made similar arguments about the rape: "Daniela tells him, 'Leave.' She tells him, 'No.' She tells him, 'Stop.' And he doesn't do any of that. . . . He continues with his forcible sexual assault on Daniela."

In defense closing, counsel argued that Daniela's testimony differed about whether she told Reyes to stop or leave during or before the oral copulation and rape, that Reyes's belief was important, and the prosecutor was required to prove Reyes's state of mind as to whether Daniela was consenting to the acts. Defense counsel argued that the law as to those counts was that the defendant was not guilty if he actually and reasonably believed the woman consented to the intercourse and had such belief throughout the act of intercourse. Using an example of a dating scenario and pointing to the absence of physical injury to Daniela, counsel asserted that Daniela's unexpressed feeling that she was forced, and the absence of evidence that Reyes used force or fear, compelled a finding that Reyes was not guilty. He also pointed to evidence that Daniela told an examining nurse that Reyes gave her $20, arguing that "[Daniela] would not be the first person to be more inclined to have sex with someone [for money]."

8

In rebuttal, the prosecutor referenced counsel's argument about consensual encounters, stating: "[Defense counsel] was talking about people going on dates and women getting bought dinners, not prostitutes, just the nice fun date. And [he] argued about that $20. Not only was Daniela a slut, she was cheap. She sold herself to that man who could be her father, who had children older than her, for $20. If you believe the defense version that Daniela consented, that's what he's trying to tell you. You alone can judge the facts. You alone can judge the testimony. Daniela didn't sell herself. She testified that she's gay."

Defense counsel objected that the argument violated the court's in limine ruling to exclude sexual background evidence. The court pointed out that defense counsel had originally elicited the testimony that Daniela was gay, which was not stricken from the record. In a bench conference, defense counsel pressed his objections that the prosecutor committed misconduct by delving into an area governed by the in limine ruling; that the prosecutor should have minimized such evidence and the court should instruct the jury to disregard the comment or declare a mistrial. The court denied the mistrial request. The prosecutor responded that defense counsel pushed Daniela to testify as she did, but the fact Daniela was gay "doesn't mean that she has any type of sex. That's the rape shield, is the sex part." The court agreed, ruling, "The fact that one person is or isn't gay has nothing to do with their sexuality." It ruled the prosecutor's statement was "within the realm of reasonable argument."

9

2. *Analysis*

In challenging the prosecutor's rebuttal comment concerning Daniela's testimony of her sexual orientation, Reyes argues: "The prosecutor should have addressed the issue of consent during her argument in chief. The crimes charged in counts one and two each required that the prosecutor prove, as an element of the offense, that Daniela did not consent to the act. . . . [B]y failing to address the question of consent until her rebuttal argument, the prosecutor made it impossible for appellant's trial counsel to respond during summation to the prosecutor's argument on the only element of counts one or two that was actually contested at trial." Citing *People v. Robinson* (1995) 31 Cal.App.4th 494, Reyes maintains the prosecutor presented arguments "designed to incriminate the defendant, making those arguments immune from defense reply" and violated both federal and state standards.

As an initial matter, Reyes's specific argument lacks support in the record, as our foregoing summary indicates the prosecutor plainly raised the issue of Daniela's consent in her initial closing summation, and did not blindside defense counsel in making her arguments. Reyes clarifies in his reply brief that is claim is directed to the prosecutor's use of Daniela's sexual orientation in her rebuttal closing. To the extent Reyes challenges the prosecutor's mention of Daniela's sexual orientation for the first time in rebuttal argument as evidence tending to show Daniela would not have consented to the sex acts, we conclude he has not demonstrated the prosecutor's argument amounts to misconduct.

Prosecutors may make vigorous arguments and fairly comment on the evidence; they have broad discretion to argue inferences and deductions from the evidence to the

10

jury. (*People v. Sandoval* (2015) 62 Cal.4th 394, 450.) In particular, "[r]ebuttal argument must permit the prosecutor to fairly respond to arguments by defense counsel." (*People v. Bryden* (1998) 63 Cal.App.4th 159, 184;[4] see *People v. Hill* (1967) 66 Cal.2d 536, 562.) Indeed, "even otherwise prejudicial prosecutorial argument, when made within proper limits in rebuttal to arguments of defense counsel, does not constitute misconduct." (*People v. McDaniel* (1976) 16 Cal.3d 156, 177; *People v. Hill*, at pp. 560-561 ["a prosecutor is justified in making comments in rebuttal, perhaps otherwise improper, which are fairly responsive to argument of defense counsel and are based on the record"].) In such circumstances, the prosecutor "cannot be charged with misconduct if his comments only spill over somewhat into a forbidden area; the departure from propriety must be a substantial one." (*People v. Hill*, at p. 561.) Thus, in *People v. Hill*, the California Supreme Court held that misconduct cannot be based on a prosecutor's remarks responsive to defense counsel's argument, as long as those remarks do not go beyond the record. (*People v. Hill*, at p. 562; see also *People v. Tully* (2012) 54 Cal.4th 952, 1016.)

Here, Daniela's claimed sexual orientation was in evidence. It was not improper, nor did it violate any pretrial evidentiary ruling (see footnote 3, *ante*), for the prosecutor

---

4 In *Bryden*, the prosecutor mentioned a key piece of evidence, a redacted prison note between two inmates, in her opening statement and the note was admitted into evidence. (*People v. Bryden*, *supra*, 63 Cal.App.4th at p. 184.) However, it was not until the prosecutor's rebuttal closing argument that she presented a chart comparing the evidence of the note with other evidence in more detail. (*Ibid*.) The Court of Appeal rejected the defendant's claim of misconduct, stating that the prosecutor did not refer to matters outside the record, but fairly responded to defense counsel's arguments. (*Ibid*.)

to draw a deduction from that fact in response to defense counsel's closing arguments concerning consent.  On this record, it cannot be said the prosecutor's brief reference was so egregious that it infected the entire trial, rendering it fundamentally unfair.  (Accord, *People v. Fernandez* (2013) 216 Cal.App.4th 540, 563.)  This was not a situation, as in *People v. Robinson*, *supra*, 31 Cal.App.4th 494, in which the prosecutor committed numerous acts of misconduct, including by giving a "perfunctory . . . opening argument designed to preclude effective defense reply, and then giv[ing] a 'rebuttal' argument— immune from defense reply—10 times longer . . . than his opening argument." (*Robinson*, 31 Cal.App.4th at p. 505.)  Rather, the prosecutor gave a fair response to Reyes's closing argument concerning Daniela's asserted consent to the sex acts.  And in *Robinson*, the appellate court's decision to reverse was based on the prosecutor's misconduct both before and during trial, as well as error by the trial court in excluding defense evidence.  (*Ibid*.)  Given our rejection below of Reyes's second claim of prosecutor misconduct, no such cumulative error occurred here.

C. *Asserted Misconduct in Explaining the Reasonable Doubt Standard*

    1. *Background*

        Following the presentation of evidence, the trial court instructed the jury as to reasonable doubt with CALCRIM No. 220 as follows:  "A defendant in a criminal case is presumed to be innocent.  This presumption requires that the People prove a defendant guilty beyond a reasonable doubt.  Whenever I tell you that the People must prove something, I mean they must prove it beyond a reasonable doubt.  [¶]  Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is

true.  The evidence need not eliminate all possible doubt, because everything in life is open to some possible or imaginary doubt.  [¶]  In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all of the evidence that was received throughout the entire trial.  Unless the evidence proves a defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."

During closing argument, defense counsel discussed Reyes's testimony and his belief that the sex with Daniela was consensual, and argued that Reyes's only crime was having sex with a minor.  He argued:  "[The People] have to prove it beyond a reasonable doubt from Mr. Reyes, what he reasonably believed.  And they have to prove that he could not, beyond a reasonable doubt, reasonably believe that this young woman was consenting to his sexual acts upon her.  [¶]  And reasonable doubt . . . they have to have proof that leaves you with the abiding conviction that if you were to reach a guilty verdict, you have to have an abiding conviction that that's the verdict.  Not today, not tomorrow.  . . .  [¶]  And if someone a year from now came running in with one of those cell phone videos . . . and everything is on video, you would have to be able to say, 'No.' I have an abiding conviction that my verdict was true and I don't need to see it.  But if you want to see that video, if you have any reasonable doubt about what happened . . . with Daniela, . . . if you have any reasonable doubt about what happened, even a little reasonable doubt, then the verdict is not guilty."

13

During the prosecutor's closing rebuttal argument, the following colloquy occurred:

"[The prosecutor]: Reasonable doubt is proof that leaves you with an abiding conviction the charge is true. The evidence need not eliminate all possible doubt, because everything in life is open to some doubt. Reasonable doubt. Reasonable doubt comes into play only if you have a reasonable doubt.

"[Defense counsel]: Objection. Misstates reasonable doubt. It always comes into play.

"The Court: Ladies and gentlemen, you have the jury instruction, and that's [CALCRIM No.] 220. It is reasonable doubt. It is defined in that instruction.

"[The prosecutor]: If you don't have a doubt that the defendant raped and forcefully orally copulated Daniela, touched . . . Daniela in a rude manner . . . the concept of reasonable doubt is not a problem and you vote guilty. Only if you have a doubt then consider, is that doubt reasonable? Is it a possible doubt or a reasonable doubt?"[5]

2. *Analysis*

---

[5] The prosecutor continued: "[Defense counsel] talked about it because I think that I talked about it in opening or voir dire. Is it possible that I go home at night? I don't know what the raceways are called here, but I go home and I get on my little silks and I run to the horse racing arena and then I race like I'm *Secretariat*, which is really old. Is it possible? Well, yeah. Everything is possible. Look at me. I'm not a horse jockey. First of all, I'm too tall. And second of all, I don't think that I fit the weight requirements, but don't tell my husband." Defense counsel made another objection: "Same objection. Minimizing reasonable doubt." The court responded: "The jury has the instruction."

14

Pointing out prosecutors must not misstate the law in general and particularly may not absolve the prosecution from its obligation to overcome reasonable doubt of the elements of the offenses, Reyes argues the prosecutor's statement that reasonable doubt "comes in play only if you have reasonable doubt" misstated and trivialized the role that the standard plays in a criminal trial, and that her ensuing comments about possible doubt and reasonable doubt "grossly oversimplified the central role of the reasonable doubt standard in the jury's decision-making process." Reyes maintains the arguments lessened the standard by "making it seem jurors would not need to take that standard into consideration unless they had a doubt about the truth of the charge after tentatively making a determination of guilt." The People respond that Reyes forfeited the issue by failing to object on the specific ground of misconduct, but that the prosecutor did not misstate the law in any event. They also maintain any error was harmless.

We observe that though Reyes's counsel objected to the prosecutor's comments on grounds they misstated or minimized the standard, he did not object that the prosecutor's statements constituted misconduct. Counsel forfeited any claim of prosecutorial misconduct in connection with these remarks by failing to assign misconduct to the prosecutor's statements. (Accord, *People v. Thomas* (2012) 54 Cal.4th 908, 938-939.) Counsel has an obligation to state the "*specific ground* for an objection in order to preserve the issue for appeal." (*Id*. at p. 938, citing *People v. Stanley* (2006) 39 Cal.4th 913, 952.)

But addressing the contention in any event, reversal is required only if, when the complained-of comments are viewed in the context of the prosecutor's whole argument,

15

there is a "reasonable likelihood the jury understood or applied [them] in an improper or erroneous manner." (*People v. Wilson* (2005) 36 Cal.4th 309, 337; *People v. Dennis* (1998) 17 Cal.4th 468, 522 [the reviewing court must view the statements of a prosecutor claimed to be misconduct in the context of the argument as a whole, not in isolation].) In conducting this inquiry, " 'we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*Wilson*, at p. 338.)

Reyes does not point to any indication in the record, and we have found none, that as a result of the prosecutor's remarks, the jurors used the reasonable doubt standard to evaluate doubts they may have had after preliminarily reaching a conclusion as to Reyes's guilt rather than deciding whether the prosecution had met its burden to prove all elements of the charged offenses beyond a reasonable doubt. Indeed, the jury's decision that it could not reach a finding on count 5 or the multiple victim allegations (*ante*, fn. 2) suggests it carefully applied the reasonable doubt standard in its deliberations. In any event, with respect to the prosecutor's remarks, we observe that elsewhere, she told the jurors to follow the law as stated in the court's instructions, and she correctly characterized the applicable standard without objection from defense counsel, explaining that the evidence had shown beyond a reasonable doubt, "not beyond all possible doubt" or "a shadow of a doubt," that Reyes committed the alleged offenses. The court properly instructed the jury with CALCRIM No. 200 regarding its obligation to follow the law set forth in the instructions, and to disregard attorney comments that were inconsistent with the instructions. The jury was also instructed with CALCRIM No. 222, that "[n]othing

16

that the attorneys say is evidence," as well as CALCRIM No. 220, which correctly instructed the jury about the presumption of innocence and the prosecutor's burden of proving guilt beyond a reasonable doubt. After the challenged statements by the prosecutor, the court referred the jury back to its instructions.

Under the circumstances, we presume the jury followed the court's instructions. (*People v. Boyette* (2002) 29 Cal.4th 381, 436; see also *People v. Prince* (2007) 40 Cal.4th 1179, 1295.) Nothing in the record rebuts or even tends to rebut that presumption. " 'When [closing] argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." ' " (*People v. Centeno* (2014) 60 Cal.4th 659, 676.)

Finally, even attributing some error in the prosecutor's comment, we conclude Reyes has not shown it reasonably likely that he would have obtained a more favorable verdict or better result absent the challenged statements. (*People v. Blacksher* (2011) 52 Cal.4th 769, 828, fn. 35.) We also conclude the challenged conduct was harmless beyond a reasonable doubt. (*Ibid*.; *People v. Cook* (2006) 39 Cal.4th 566, 608.) The People's evidence consisted of Daniela's testimony, as well as evidence that Reyes had lied to police concerning his whereabouts that afternoon. He conceded to committing the sex acts, defending only on grounds that Daniela consented. In our view, the fact Daniela suffered no physical injuries does not render the case a close one on the issue of consent as Reyes maintains, particularly when the examining nurse agreed such injury was not

17

always present.  In light of the relatively strong evidence of Reyes's guilt, we cannot say any purported misconduct was prejudicial.

## II.  *Claim of Sentencing Error*

Reyes contends the trial court sentenced him to life without the possibility of parole under section 667.61, subdivision (*l*) under the mistaken belief it had no discretion to impose a lesser sentence.  Relying on the general proposition that a sentencing judge has discretion to strike an enhancement under section 1385 (*People v. Thomas* (1992) 4 Cal.4th 206, 210) and other circumstances concerning the state of the law when subdivision (*l*) took effect, Reyes argues section 667.61 gave the court discretion to strike the true finding under subdivision (*l*) and impose a term of 15 years to life under section 667.61, subdivision (b).  Because according to Reyes the sentence was not a true exercise of the court's sentencing discretion, he asks that we remand the matter for resentencing so the court can properly exercise its discretion.

A.  *Background*

As we have summarized above, the jury found true special allegations that Reyes committed the crimes of counts 1 and 2 "during the commission of burglary, with the intent to commit forcible oral copulation and/or forcible rape, and that the victim was a child 14 years of age or older and under 18 years of age at the time of the offense in violation of . . . section 667.61, subdivision (*l*) . . . ."  The jury separately found true allegations under section 667.61, subdivisions (b) and (e) that Reyes "committed the crime[s] . . . during the commission of burglary . . . ."

18

During Reyes's sentencing hearing, Reyes's counsel conceded, and the prosecutor agreed, that Reyes's sentence was governed by statute, and that the court had no discretion with respect to sentencing. Reyes's counsel, however, objected to the sentence on grounds it was cruel and unusual under the Eighth Amendment to preserve possible issues arising in the federal courts. The court proceeded to sentence Reyes on the determinate counts, and then on the indeterminate counts and special allegations, imposing life without the possibility of parole sentences on the findings under section 667.61, subdivision (*l*), and staying under section 654 the findings under section 667.61, subdivisions (b) and (e).

B. *Legal Principles*

The "One Strike" law, section 667.61, is an alternative sentencing scheme that applies to specified felony sex offenses. (*People v. Anderson* (2009) 47 Cal.4th 92, 102; *People v. Woods* (2015) 241 Cal.App.4th 461, 479 & fn. 14.) "The purpose of the One Strike law is 'to ensure serious and dangerous sex offenders would receive lengthy prison sentences upon their first conviction,' 'where the nature or method of the sex offense "place[d] the victim in a position of *elevated vulnerability*." ' " (*People v. Alvarado* (2001) 87 Cal.App.4th 178, 186.) As of September 2010 (Stats. 2010, ch. 219, § 16), the One Strike law mandates imposition of a sentence of life without the possibility of parole if the jury finds a person is convicted of one or more enumerated sexual offenses and also has found true certain factual allegations concerning the manner in which the underlying offense was committed (§ 667.61, subds. (d), (e)), when the victim is a minor who is 14 years old or older. (§ 667.61, subd. (c), (*l*); see, e.g., *Anderson*, at p. 102.)

Specifically, section 667.61, subdivision (*l*) provides:  "Any person who is convicted of an offense specified in subdivision (n) under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e), upon a victim who is a minor 14 years of age or older shall be punished by imprisonment in the state prison for life without the possibility of parole. If the person who was convicted was under 18 years of age at the time of the offense, he or she shall be punished by imprisonment in the state prison for 25 years to life."  As relevant here, subdivision (n) "shall apply" to the offenses of forcible rape (§ 262, subd. (a)(1)), and oral copulation under section 288a, subd. (c)(2).  (§ 667.61, subd. (n).)

Under section 667.61, subdivision (d)(4), a defendant is subject to the harsher sentence if he "is convicted of" a specified substantive sex offense under subdivision (n), and also "committed the [offense] during the commission of a burglary of the first degree, as defined in subdivision (a) of Section 460, with intent to commit an offense specified in subdivision (c) [including forcible oral copulation and rape]."  (§ 667.61, subds. (d)(4), (*l*).)

Section 667.61, subdivision (g) provides:  "Notwithstanding Section 1385 or any other provision of law, the court shall not strike any allegation, admission, or finding of any of the circumstances specified in subdivision (d) or (e) for any person who is subject to punishment under this section."

The One Strike law provides that "[t]he penalties provided in this section shall apply only if the existence of any circumstances specified in subdivision (d) or (e) is

alleged in the accusatory pleading pursuant to this section, and is either admitted by the defendant in open court or found to be true by the trier of fact." (§ 667.61, subd. (o).)

C. *Analysis*

Section 1385, subdivision (a) gives a trial court authority to strike "in furtherance of justice" factual allegations relevant to sentencing, including both enhancement allegations and allegations that support an alternate sentencing scheme. (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504, 518, 529-530 (*Romero*) [trial court has power to strike or dismiss three strike allegations under the alternative sentencing scheme of the "Three Strikes" law].) The Legislature may eliminate a court's power to strike or dismiss sentencing allegations under section 1385 (*id.* at p. 518), but "we will not interpret a statute as eliminating courts' power under section 1385 'absent a clear legislative direction to the contrary.' " (*Ibid*.)

We conclude that section 667.61, subdivision (g) provides such clear legislative direction. Subdivision (g) of section 667.61 begins with the phrase, "Notwithstanding Section 1385 or any other provision of law . . . ." The California Supreme Court has said that "[w]hen the Legislature intends for a statute to prevail over all contrary law, it typically signals this intent by using phrases like 'notwithstanding any other law' or 'notwithstanding other provisions of law.' " (*In re Greg F*. (2012) 55 Cal.4th 393, 406.) This phrase in a statute is a term of art which signals the legislative intent that the statute control, override or displace contrary or conflicting law, or whatever law would otherwise govern. (*Greg F.*, at p. 406; *Arias v. Superior Court* (2009) 46 Cal.4th 969, 983; *People v. Campos* (2011) 196 Cal.App.4th 438, 452.) And here, the Legislature

21

expressly intended to override the trial court's power under section 1385 by referencing that statute.  Having been pleaded, proven and found true by the jury, the section 667.61, subdivision (d) circumstance of first degree burglary that gives rise to Reyes's sentence of life without the possibility of parole under section 667.61, subdivision (*l*) "shall not" be stricken.  (§ 667.61, subd. (g); *People v. Hammer* (2003) 30 Cal.4th 756, 772 [Under former section 667.61, subdivision (f), "courts have no . . . discretion [to 'strike' any punishment-enhancing circumstance (including a prior strike conviction) in the interests of justice]; sentencing under the full and severe terms of the law is mandatory"]; *People v. Estrada* (1997) 57 Cal.App.4th 1270, 1277 [under former section 667.61, subdivision (f), trial court had no discretion to strike circumstance of first degree burglary under section 661.61, subdivision (d) giving rise to 25-year-to-life sentence].)

We reject Reyes's argument concerning the Legislature's intent to retain the trial court's section 1385 discretion in these circumstances.  He maintains such intent is reflected by the fact that when the Legislature amended section 667.61 in 2010 to include subdivision (*l*), it did not also amend section 667.61, subdivision (g) to list subdivision (*l*) within the findings that "shall not" be stricken.[6]  But here, the trial court's imposition of a sentence of life without the possibility of parole under subdivision (*l*) necessarily

---

6    At oral argument, Reyes appears to have refined his argument to say that the trial court had discretion under section 1385 to strike the specific allegation within section 667.61 subdivision (*l*) as to the victim's age.  The attorney general asserted that this was an entirely new argument, and we agree Reyes neither made nor developed this point in his supplemental brief on the question.  We decline to consider the argument as forfeited.

22

depended on the jury's findings of the first degree burglary circumstance under subdivision (d), which *is* specifically included in section 667.61, subdivision (g) as a circumstance that shall not be stricken. The Legislature's failure to amend section 667.61, subdivision (g) as Reyes contends does not reflect any intent to grant a court sentencing a defendant under subdivision (*l*) discretion under section 1385 to strike a jury's findings supporting that sentence.

A court is "presumed to have been aware of and followed the applicable law" when imposing a sentence. (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) The burden is on Reyes to demonstrate that the court misunderstood its sentencing discretion. (*People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1523.) We conclude the court did not misunderstand its discretion because the One Strike law does not permit the court to exercise discretion under section 1385 to strike the factual finding giving rise to Reyes's life without the possibility of parole sentence under section 667.61, subdivision (*l*).

### III. *Claim of Cruel and Unusual Punishment*

Reyes contends his One Strike sentence of life without the possibility of parole for committing two forcible sex offenses violates the proscriptions against cruel and unusual punishment in the Eighth Amendment to the United States Constitution and article I,

(See *People v. Alexander* (2010) 49 Cal.4th 846, 922 [claim forfeited by failing to raise it in reply brief]; *People v. Crow* (1993) 6 Cal.4th 952, 960, fn. 7 [declining to address issue raised by defendant for the first time at oral argument]; *In re Villa* (2013) 214 Cal.App.4th 954, 963, fn. 6 [declining to consider attorney general's argument not mentioned in return but raised for first time at oral argument]; *People v. Dixon* (2007) 153 Cal.App.4th 985, 996 [it is improper to raise issues for the first time at oral argument].)

section 17 of the California Constitution.  Because his counsel did not object to the sentence under the California Constitution, Reyes argues his counsel was prejudicially ineffective for failing to do so, since his life-without-the-possibility-of-parole sentence is disproportionate to his offense under the applicable state standards.  As we will explain, we reject these contentions.

A.  *Eighth Amendment*

The Eighth Amendment's ban on "cruel and unusual" punishment (U.S. Const., 8th Amend.) embodies " 'the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." ' "  (*In re Coley* (2012) 55 Cal.4th 524, 538; see *Graham v. Florida* (2011) 560 U.S. 48, 59.)  In *Coley*, the California Supreme Court stated:  " '[T]he Eighth Amendment contains a "narrow proportionality principle," that "does not require strict proportionality between crime and sentence" but rather "forbids only extreme sentences that are 'grossly disproportionate' to the crime." ' "  (*Coley*, 55 Cal.4th at p. 542, quoting *Graham*, at pp. 59-60; see also *Harmelin v. Michigan* (1991) 501 U.S. 957, 1001 (conc. opn. of Kennedy, J.), quoting *Solem v. Helm* (1983) 463 U.S. 277, 288.)  "[U]nder the approach . . . , '[a] court must begin by comparing the gravity of the offense and severity of the sentence.  [Citation.]  "[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.  [Citation.]  If this comparative analysis "validate[s] an initial

24

judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual.' " (*Coley*, at p. 542, quoting *Graham*, at p. 60.)

Outside the death penalty context, " 'successful challenges to the proportionality of particular sentences have been exceedingly rare.' " (*Ewing v. California* (2003) 538 U.S. 11, 21 (lead opn. of O'Connor, J.); see also *Lockyer v. Andrade* (2003) 538 U.S. 63, 73 [proportionality principle is "applicable only in the 'exceedingly rare' and 'extreme' case"].) There is no question that "the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts.' " (*Harmelin v. Michigan*, *supra*, 501 U.S. at p. 998.) It is for this reason that when faced with an allegation that a particular sentence amounts to cruel and unusual punishment, "[r]eviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes . . . ." (*Solem v. Helm*, *supra*, 463 U.S. at p. 290.)

As we have summarized above, section 667.61, subdivision (*l*) mandates a sentence of life without the possibility of parole for specified sex offenses against minors that are committed under one or more aggravating circumstances. (§ 667.61, subd. (*l*).) We have found no case deciding whether such a sentence imposed under section 667.61, subdivision (*l*) constitutes cruel and/or unusual punishment. However, appellate courts have upheld the constitutionality of indeterminate prison terms imposed under the One Strike law against such challenges under the cruel and unusual punishment prohibition

under the Eighth Amendment in cases where the defendants committed rape in the commission of a burglary done with the intent to commit another sex crime.

In *People v. Crooks* (1997) 55 Cal.App.4th 797, 805-809, the Court of Appeal rejected the defendant's challenge to his 25-years-to-life sentence for committing a rape while engaged in the commission of a first degree burglary with the intent to commit that kind of rape. (*Crooks*, at p. 804.) The *Crooks* court pointed out that in *Harmelin v. Michigan*, a defendant was lawfully sentenced to life without parole for possessing a large quantity of drugs. (*Harmelin v. Michigan*, *supra*, 501 U.S. at pp. 961, 994-995 (lead opn. of Scalia, J.); see also *id.* at pp. 1008-1009 ["The dangers flowing from drug offenses and the circumstances of the crime committed here demonstrate that the Michigan penalty scheme does not surpass constitutional bounds"] (conc. opn. of Kennedy, J.).) Because the defendant in *Crooks* was a "forcible rapist" who had received a lesser sentence, the sentence was not grossly disproportionate to the more serious crimes. (*Crooks*, at p. 806.) *Crooks* also relied upon the majority opinion in *Solem v. Helm*, *supra*, 463 U.S. 296. (*Crooks*, 55 Cal.App.4th at p. 806.) Though the court in *Solem* invalidated a life sentence in view of the "passive" nature of the defendant's fraudulent check writing (*Solem*, at p. 296), the majority acknowledged that a life sentence for other violent criminals would pass constitutional muster. (*Crooks*, at p. 806, citing *Solem*, 463 U.S. at p. 299, fn. 26.) The *Crooks* court held that the defendant's sentence did not violate the Eighth Amendment.

In *People v. Alvarado*, the appellate court considered an Eighth Amendment challenge to the 15-year-to-life sentence of a defendant who was convicted of rape during

26

the commission of a burglary under section 667.61, subdivision (e)(2). (*People v. Alvarado*, 87 Cal.App.4th at pp. 183, 185.) *Alvarado* pointed out that subdivision (e)(2) "reflects a legislative finding that the victims of a residential burglary are more vulnerable because they are inside a structure rather than out in public" and that the Legislature "sought to deter by harsher punishment those who burglarize homes and exploit the vulnerability of people inside to commit sex offenses." (*Id.* at pp. 186, 187.) Addressing the defendant's claim that his sentence was roughly the same as for second degree murder, the court stated, "Although the finality of the consequences of second degree murder make that crime categorically different from rape during a burglary, the double trauma of having one's home invaded and then being sexually violated is substantial. Moreover, second degree murder does not require a specific intent to kill or commit a felony and requires only that a person willfully and knowingly perform an act dangerous to life with conscious disregard for life. [Citation.] On the other hand, rape during a burglary reflects that the person decided to enter another's residence for a felonious purpose and also decided to commit a sexual assault inside. Contrary to defendant's argument, we cannot say that punishing such conduct as severely as second degree murder is either shocking or outrageous." (*Id.* at p. 200.) Finally, the court observed: "Clearly, California has taken the most aggressive approach toward punishing and deterring rape during the commission of a burglary. As defendant asserts, it imposes the longest terms with the least amount of judicial discretion. However, the fact, acknowledged by defendant, that some other jurisdictions allow for the same or even harsher punishment (Louisiana and Washington) indicates that in the abstract, the One

Strike term imposed here is not irrational or obviously excessive punishment for rape during a burglary. The fact that the sentence is mandatory merely reflects the Legislature's zero tolerance toward the commission of sexual offenses against particularly vulnerable victims. It does not, however, render a defendant's sentence excessive as a matter of law in every case." (*Id*. at pp. 200-201.) Referring to *Harmelin v. Michigan*, *supra*, 501 U.S. 957 and other cases, *Alvarado* concluded the defendant had failed to show his sentence was so disproportionate to his crime as to shock the conscience or offend fundamental notions of human dignity. (*Alvarado*, at p. 201.)

The analyses of the courts in *Crooks* and *Alvarado* inform us in addressing Reyes's challenge. Looking to the gravity of Reyes's offenses and comparing them to his life without the possibility of parole sentence mandated by the Legislature, we are not persuaded that the comparison gives rise to an inference of gross disproportionality. We recognize that Reyes's sentence is very severe. (*Harmelin v. Michigan*, *supra*, 501 U.S. at p. 1001 [sentence of life imprisonment without the possibility of parole is "the second most severe penalty permitted by law"]; see *Graham v. Florida*, *supra*, 560 U.S. at p. 69.) But the offenses for which Reyes was punished—forcible rape and forcible oral copulation—were not only found to have occurred during the commission of a residential burglary, but also were committed against a minor, society's most vulnerable victims. In *People v. Scott* (1994) 9 Cal.4th 331, the California Supreme Court stated: "Above and beyond the protection afforded to all victims of sexual assault, the Legislature has determined that children are uniquely susceptible to 'outrage' and exploitation. Hence, special laws on the subject of sex with children have been enacted. They expand the

28

kinds of acts which may be deemed criminal sexual misconduct, and they generally operate without regard to force, fear, or consent." (*Id*. at pp. 341-342; see also *In re M.V.* (2014) 225 Cal.App.4th 1495, 1521-1522.)

We accept and defer to the California Legislature's judgment that sex crimes against minors, when they occur in connection with other offenses such as burglary that pose a heightened danger to human life (*People v. Estrada*, *supra*, 57 Cal.App.4th at p. 1281), are very grave offenses that warrant severe punishment. It is of no moment that Reyes did not use violence or physically injure Daniela; he did not have to hurt her in order to do permanent psychological damage. And, in view of *Harmelin v. Michigan* in particular, in which the high court upheld a life without parole sentence for a defendant with no prior felony convictions who possessed a large quantity of drugs (*Harmelin v. Michigan*, *supra*, 501 U.S. at pp. 961, 994-995, 1008-1009), we reject Reyes's claim that his punishment is disproportionate because it treats him more severely than criminals who have committed more serious crimes. In his concurring opinion in *Harmelin*, Justice Kennedy shed light on the policy judgment inherent in a proportionality decision: "[A] rational basis exists for Michigan to conclude that petitioner's crime [of possessing a large quantity of cocaine] is as serious and violent as the crime of felony murder without specific intent to kill, a crime for which 'no sentence of imprisonment would be disproportionate.' " (*Id*. at p. 1004.) In this case, we conclude it is reasonable to place Reyes's conduct in the same kind of analysis. In our view, this is not the rare case giving rise to an inference that Reyes's sentence is grossly disproportionate given the gravity of Reyes's crimes, in which he broke into a person's home and, with intent to do so, forcibly

29

raped and orally copulated a 14-year-old minor. Having reached this conclusion, we do not reach the other prongs of the analysis under the Eighth Amendment. (*People v. Coley*, *supra*, 55 Cal.4th at p. 542; *Graham v. Florida*, *supra*, 560 U.S. at p. 60.)

B. *California Constitution*

Despite counsel's failure to object to Reyes's sentence under the California Constitution, we will address the merits of Reyes's contention to show counsel was not constitutionally ineffective by failing to make a futile or meritless objection. (*People v. Weaver* (2001) 26 Cal.4th 876, 931; *People v. Cudjo* (1993) 6 Cal.4th 585, 616 ["Because there was no sound legal basis for objection, counsel's failure to object to the admission of the evidence cannot establish ineffective assistance"]; *People v. Noriega* (2015) 237 Cal.App.4th 991, 1003.) We conclude here that any objection under the California Constitution would have been without merit.

A prison sentence will violate the prohibition against cruel or unusual punishment under the California Constitution (art. I, § 17) where " 'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' " (*People v. Dillon* (1983) 34 Cal.3d 441, 478; see also *People v. Boyce* (2014) 59 Cal.4th 672, 718-719.) A defendant has a "considerable burden" to show a punishment is cruel or unusual under the California Constitution. (*People v. Wingo* (1975) 14 Cal.3d 169, 174.) "The doctrine of separation of powers is firmly entrenched in the law of California, and a court should not lightly encroach on matters which are uniquely the domain of the Legislature. Perhaps foremost among these are the definition of crime and the determination of punishment." (*Ibid.*) Thus, " '[o]nly

30

in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive[.]' " (*People v. Meneses* (2011) 193 Cal.App.4th 1087, 1093.)

To determine whether a particular sentence is disproportionate to the offense for which it is imposed, we first examine "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." (*In re Lynch* (1972) 8 Cal.3d 410, 425; *People v. Dillon*, *supra*, 34 Cal.3d at p. 479; *People v. O'Connor* (1986) 188 Cal.App.3d 645, 648.) "A look at the nature of the offense includes a look at the totality of the circumstances, including motive, the way the crime was committed, the extent of the defendant's involvement, and the consequences of defendant's acts. A look at the nature of the offender includes an inquiry into whether 'the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind.' " (*People v. Thongvilay* (1998) 62 Cal.App.4th 71, 88.) We next compare the punishment imposed with punishments prescribed by California law for more serious offenses. (*Lynch*, at pp. 426-427.) Finally, we compare the punishment imposed with punishments prescribed by other jurisdictions for the same offense. (*Id.* at pp. 427-429.)

Reyes points out he was 35 years old when he committed the offenses of counts 1 and 2. His record shows he was arrested for illegal entry into the United States and subject to deportation proceedings in 2002 and 2004, and he had prior arrests in 2002 with no disposition noted. He points out there is no indication in his prior record that he committed prior sex offenses, and his probation officer scored him in the low risk

31

category for being charged with or convicted of another sexual offense if he were released into the public at the time of his sentencing. Though Reyes acknowledges his convictions in count 1 and 2 are serious offenses, he refers to the absence of injury or trauma on Daniela's examination and maintains his conduct in committing the crimes was "not unusually egregious." He argues that, viewing the evidence used to convict him, "nothing about it justifies the most severe sentence a court can impose for criminal conduct, short of death."

Reyes further argues his sentence is commensurate with that required for a first degree murder with special circumstances depending on the circumstances under which the murder was committed, and that had he killed Daniela while committing the crimes against her, his punishment would likely be the same (and not a sentence of death), given his minimal criminal history and the absence of evidence he inflicted physical injury. He argues that under the circumstances, his punishment of life without the possibility of parole is disproportionate because it treats him more severely than criminals who have committed more serious crimes. Finally, Reyes points to a federal sentencing treatise for statistics of other industrialized nations that either do not permit life without the possibility of parole sentences, use it sparingly, or do not permit it to be mandatory.

In addressing the first prong, we are not persuaded by Reyes's attempt to minimize his personal criminal history and the nature of his offenses against Daniela. Though his history is without prior convictions for sex offenses, it is not devoid of criminality, and given the fact he forced his way into a residence intending to commit heinous multiple sex offenses against a minor, the nature and severe consequences of his offenses do not

32

suggest a violation of the California Constitution's proscription against cruel or unusual punishment. (Accord, *People v. Martinez* (1999) 76 Cal.App.4th 489, 492 [defendant's lack of a prior record was "not determinative" given the extremely violent and dangerous behavior in committing attempted murder with personal use of a firearm].) Though Reyes does not overtly compare himself to the defendant in *People v. Dillon*, *supra*, 34 Cal.3d 441, he cites it as an example of a case in which the sentence was determined to violate constitutional limits. In *Dillon*, the California Supreme Court reduced a life sentence for first degree murder to manslaughter where the 17-year-old defendant with no criminal record shot a man he thought was about to shoot him. (*Dillon*, at pp. 482-483, 488.) Unlike *Dillon*, Reyes is a mature adult, not an "unusually immature youth" who was responding to a suddenly developing situation in which he perceived immediate danger. (*Id*. at p. 488.) And, Reyes was in complete control of the situation, his actions were unprovoked, and he instigated multiple forcible sex offenses against Daniela. (Accord, *People v. Guinn* (1994) 28 Cal.App.4th 1130, 1146-1147.) *Dillon* does not compel a conclusion that Reyes's punishment is excessive.

As for the comparison of other punishments for more serious offenses under California law, Reyes does not fare any better. As the court in *People v. Crooks* pointed out, the Legislature has made offenses not involving homicide punishable by life imprisonment without the possibility of parole, and such sentences are not cruel or unusual in view of the fact they involve an "inherent danger to the life of the victim . . .

33

even if no death occurs." (*People v. Crooks*, *supra*, 55 Cal.App.4th at pp. 807-808.)[7]  In *People v. Estrada*, the appellate court rejected the defendant's claim of cruel or unusual punishment under the California Constitution where the defendant was sentenced to 25 years to life under section 667.61 for committing a rape and a first degree burglary with the intent to commit the forcible rape.  (*Estrada*, *supra*, 57 Cal.App.4th at pp. 1277-1282.)  The court rejected the defendant's argument that California punished other more culpable crimes, i.e., second degree murder, less severely than rape in the course of a burglary:  "[C]omparing a defendant who commits both forcible rape and residential burglary with the intent to commit forcible rape to a defendant who commits an unpremeditated murder ignores the fact the first defendant committed two offenses, not just one, and committed the burglary for the purpose of committing the rape."  (*Id*. at p. 1282.)  The *Estrada* court also acknowledged the Legislature's decision to punish certain non-homicide crimes with life imprisonment without the possibility of parole.  (*Id*. at p. 1281.)

*Estrada* observed that the punishment under the One Strike law "is precisely tailored to fit crimes bearing certain clearly defined characteristics."  (*People v. Estrada*, *supra*, 57 Cal.App.4th at p. 1280.)  That is true as to subdivision (*l*) at issue here, where

---

7       "The Legislature has chosen to make other offenses not involving homicide punishable by life imprisonment without possibility of parole: kidnapping for the purpose of ransom, extortion or robbery with bodily harm short of death (§ 209, subd. (a)) and attempted train wrecking (§ 218).  Such sentences have been found not to constitute cruel or unusual punishment because the Legislature could reasonably decide that crimes which involve an inherent danger to the life of the victim are particularly heinous even if no death occurs." (*People v. Crooks*, *supra*, 55 Cal.App.4th at pp. 807-808, fn. omitted.)

to impose the life without parole term, the crime must be one of sexual violence *and* committed under circumstances increasing the risk of injury or death to the victim *and* committed against a minor 14 years or older.  "Thus, unlike [the defendant in *Dillon*, Reyes] cannot claim he is the victim of an indiscriminate sentencing scheme which metes out the same punishment for a broadly defined offense regardless of the circumstances surrounding the commission of the offense." (*Estrada*, at p. 1280.)  *Estrada* finally observed the section 667.61 crime involved a high degree of danger to personal safety, warranting severe punishment:  "Burglary of an inhabited dwelling also poses a risk to human life.  . . .  When we add to the risk of residential burglary the risk of rape by means of 'force, violence, duress, menace, or fear of immediate and unlawful bodily injury' (§ 261, subd. (a)(2)) it is clear the punishment of life *with* the possibility of parole after 25 years is not constitutionally out of line with other California punishments." (*Id.* at pp. 1281-1282.)  In this case, when we consider these circumstances, and add to them the fact the victim is a 14-year-old minor, the Legislature's decision to impose a sentence of life without the possibility of parole under section 667.61, subdivision (*l*) is not so disproportionate as to shock the conscious and offend fundamental notions of human dignity, and thus not constitutionally infirm.

Finally, we reject Reyes's contentions as to the final prong of the analysis.  Reyes argues his sentence is out of line with other industrialized nations.  But the relevant comparison under the California Constitution is to *other jurisdictions within the United States* (see *In Re Debeque* (1989) 212 Cal.App.3d 241, 255), and Reyes does not undertake that inquiry.  While California has taken what has been described as an

"aggressive approach" reflecting a "zero tolerance toward the commission of sexual offenses against particularly vulnerable victims," this fact alone "does not . . . render a defendant's sentence excessive as a matter of law . . . ." (*People v. Alvarado*, *supra*, 87 Cal.App.4th at pp. 200-201.) Because Reyes "makes no effort to compare his sentence with . . . punishments in *other states* for the same offense" we take it "as a concession that his sentence withstands [that] constitutional challenge . . . . " (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1231, italics added; accord, *People v. Russell* (2010) 187 Cal.App.4th 981, 995, citing *People v. Sullivan* (2007) 151 Cal.App.4th 524, 572.)[8]

Even if only a few states had comparable punishments, that would not compel a different result. As the California Supreme Court stated in *People v. Wingo*, California is not "concerned . . . with conforming our Penal Code to the 'majority rule' or the least common denominator of penalties nationwide. . . . [O]ur codes have served as a model for the nation rather than a mere mirror of the laws of other jurisdictions . . . ." (*People v. Wingo*, *supra*, 14 Cal.3d at p. 179; see also *In Re Debeque*, *supra*, 212 Cal.App.3d at

---

[8]     We note the state of Louisiana mandates life in prison at hard labor without the possibility for parole for aggravated rape, which includes penetration of a minor, even for a first time offense. (See La. R.S. § 14:42(D)(1); *State v. Albert* (2005) 914 So.2d 574, 579; *State v. Taylor* (2002) 821 So.2d 633, 642.) Likewise, Florida imposes a mandatory sentence of life without the possibility of parole for capital sexual battery, including oral copulation, on a child under the age of twelve. (Fla. Stat. §§ 794:011, 775:082(1); *Adaway v. State* (Fla. 2005) 902 So.2d 746, 747-748, 750, 752.) The United States Supreme Court recently held that Florida's capital sentencing scheme within Florida Statutes Annotated section 775:082(1), in which an advisory jury makes a recommendation to a judge, who makes the critical findings needed for imposition of a death sentence, violated the Sixth Amendment right to a jury trial. (*Hurst v. Florida* (2016) ___ U.S. ___ [2016 WL 112683].) The decision does not affect the life without parole sentences upheld against constitutional excessiveness challenges in *Adaway v. State*, *supra*, 902 So.2d 746.

36

p. 255.)  The fact California's sentencing under these circumstances is relatively severe does not change our conclusion.  Reyes has not demonstrated his sentence of life without the possibility of parole is so "disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity."  (*In re Lynch*, *supra*, 8 Cal.3d at p. 424.)

### IV.  *Amendment of Abstract of Judgment*

The People ask us to order the trial court to modify the abstract of judgment to reflect in section 2 of the Judicial Council form (CR-292) the jury's true findings on the allegations under section 667.61, subdivision (*l*) attached to counts 1 and 2 as well as the court's oral pronouncement of judgment on those counts, and to indicate by checking a box in section 8 of that form that Reyes was sentenced under that section.  Reyes concedes these modifications are proper, and also agrees with the People's assertion that the trial court sentenced him to two life terms without the possibility of parole, but intended to stay one of those terms under section 654.  We agree the abstract of judgment must be so modified to reflect Reyes's sentencing under section 667.61, subdivision (*l*) and order the trial court to correct the abstract of judgment accordingly.

### DISPOSITION

The matter is remanded and the trial court ordered to modify the abstract of judgment to reflect the jury's true findings on the allegations under Penal Code section 667.61, subdivision (*l*) attached to counts 1 and 2 as well as the court's oral

37

pronouncement of judgment on those counts, and to indicate by checking a box in section 8 of the abstract of judgment that Leonel Lopez Reyes was sentenced under that section. As so modified, the judgment is affirmed. The clerk of the superior court is directed to prepare an amended abstract of judgment in these respects, and forward a certified copy of it to the Department of Corrections and Rehabilitation.

O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.