Filed 1/22/21  P. v. Kauffman CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G058602 |
| v. | (Super. Ct. No. 17HF1240) |
| GLEN THOMAS KAUFFMAN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Robert Alan Knox, Judge.  Affirmed.

Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*          \*          \*

FACTS

After his wife died, appellant was left alone with his five-year-old daughter. Traumatized by the loss, appellant's daughter became very clingy and usually slept in his room. So when she began having sleepovers with her girlfriends, it was not unusual for them to sleep in that room, too, usually on a couch or air mattress. The two girls appellant was convicted of molesting were among those sleepovers.

The jury found appellant guilty of nine counts, six of lewd and lascivious acts on a child under fourteen (Pen. Code, § 288, subd. (a)), and three counts of sexual penetration of a child under ten (Pen. Code, § 288.7, subd. (b)). It found true the enhancement alleged that there were multiple victims of his crimes. The court sentenced appellant to 170 years in prison, comprising five 25 years-to-life terms and three 15-years-to-life terms. One 25-years-to-life term was stayed pursuant to Penal Code section 654, which prohibits double punishment for the same incident.

DISCUSSION

Kauffman filed an appeal, and we appointed counsel to represent him on that appeal. Counsel filed a brief which fully set forth the facts of the case. In fact, her conscientious and very helpful brief included 60 pages of facts, which assisted the court greatly in locating possible areas of difficulty in the transcript.

Counsel did not argue against her client but advised the court she could find no issues to argue on appellant's behalf. Appellant was invited to express his own objections to the proceedings against him but did not. Under the law, this put the onus on us to review the record and see if *we* could find any issues that might result in some kind of amelioration of appellant's lot. (*People v. Wende* (1979) 25 Cal.3d 436.) It should be emphasized that our search was not for issues upon which appellant *would* prevail, but only issues upon which he *might possibly* prevail.

We have examined the record and found no arguable issue. This is not surprising. In fact, it is what we find in the vast majority of cases in which appellate

2

counsel files a *Wende* brief. Even the most cynical observer of the legal system would have to recognize that appellate counsel has a financial incentive for finding issues. The simple matter is counsel makes more money if he/she finds an issue that is arguable than if he/she does not. So while it sometimes happens that an appellate court will find issues after appellate counsel has thrown in the towel, it is unusual.

In this case, there was a trial – a rather lengthy trial. The casual observer might posit that in several days of trial, there must have been something that was done wrong, some mistake that should be examined. But that is not the issue before us. Reversal of a criminal conviction takes place only when an error is prejudicial to the defendant's case. And in looking for issues in which the appellant might possibly prevail, we are mindful that the error would have to be one that would come within the guarantees of the constitution of our state.

Our Constitution provides in article VI, section 13 that, "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

We have looked at the evidence brought forth at appellant's trial and can find no such error. There were no controversial searches or questionable means used in obtaining statements. The instructions appear appropriate, and we cannot quarrel with the judge's handling of the jury's question. There were difficulties with the testimony of the young girls, but that is not unusual in cases of this ilk, the problems were appropriately handled, and we can find nothing that suggests *any* error, much less prejudicial error.

This is, of course, a lengthy sentence – the functional equivalent of a death sentence. But such sentences have withstood challenge for decades. (See, e.g., *People v.*

3

*Reyes* (2016) 246 Cal.App.4th 62, 82-90; [life without parole]; *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1230 [135 years to life]; *People v. Wallace* (1993) 14 Cal.App.4th 651, 666-667 [283 years and 8 months]; *People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 531-532 [129 years].) The rule is basically that while a death sentence for a single crime other than murder would not be allowed, a series of crimes might reach a level of culpability for which a sentence exceeding the life expectancy of the perpetrator would be appropriate.

We have searched for other issues and found none that we think has any chance of success. We believe counsel's decision to file a *Wende* brief was well-advised. The judgment is affirmed.

BEDSWORTH, ACTING P. J.

WE CONCUR:

THOMPSON, J.

GOETHALS, J.

4