Filed 1/11/22  P. v. Simon CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075656 |
| v. | (Super. Ct. No. FSB19003159) |
| JAMES DARWIN SIMON II, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  J. David Mazurek, Judge.  Affirmed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

# INTRODUCTION

Defendant and appellant, James Simon, appeals from the judgment entered following jury convictions for second degree robbery (Pen. Code, § 211[1]; count 1), assault with a firearm (§ 245, subd. (a)(2)), and felon in possession of a firearm (§ 29800, subd. (a)(1)). The jury also found true allegations defendant suffered two strike priors (§ 1170.12, subd. (a)(d)) and two prior serious felony convictions (§ 667, subd. (a)(1)). The court sentenced defendant to 35 years to life in prison.

Defendant contends the trial court committed instructional error by not instructing the jury on the lesser included offense of simple assault. Defendant also argues his trial attorney failed to provide effective representation by failing to request the court not to impose enhancements for his two prior serious felony convictions.[2] In addition, defendant contends the trial court violated his state and federal due process rights by imposing fines and fees without determining whether he had the ability to pay them and without holding an ability-to-pay hearing. We reject defendant's contentions and affirm the judgment.

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

[2] Defendant has also filed a habeas corpus petition alleging that his trial attorney provided constitutionally deficient representation based on the same grounds raised in the instant appeal (*Simon v. Brown*, case No. E076307). We have addressed the writ petition by separate order.

## II.

## FACTS

During the afternoon of September 6, 2019, M.R., a refrigeration technician, provided refrigeration services at a fast food restaurant. While on his ladder, he noticed codefendant Sarah Beurmann waiting to enter the restaurant bathroom. She was only wearing underwear. M.R. asked Beurmann if she would like a ride and would entertain him with an "exotic dance." Beurmann said yes, and the two went to a nearby motel. Beurmann said she was homeless and requested a new phone and some clothing items. M.R. and Beurmann shopped at nearby stores for the items she requested. M.R. was carrying $1,800 in cash, some of which he used to pay for the motel room and the items purchased for Beurmann.

When M.R. and Beurmann returned to the motel room, they talked for about 40 minutes. M.R. told Beurmann about his marriage. Defendant knocked on the motel room door. Beurmann answered the door. Defendant stood at the door staring at M.R. and then left. M.R. wondered if Beurmann had ordered some drugs.

Beurmann asked M.R. to give her a ride down the street to "see a friend and get something." M.R. gave Beurmann a ride, waited for her, and drove her back to the motel. M.R. noticed Beurmann had some drugs and syringes. Beurmann gave M.R. a backwash in the shower. Afterwards, Beurmann put on lingerie and the two attempted sexual relations. Then Beurmann went into the bathroom and remained there alone for over an

3

hour. When Beurmann came out of the bathroom, she gathered her belongings and left. M.R. locked and barricaded the door.

A few minutes later, M.R. heard a knock on the door and let Beurmann in. Beurmann sat on the bed near the door. A few minutes later someone knocked on the door. M.R. told Beurmann not to open the door. Beurmann jumped up from the bed, pushed M.R. aside, and opened the door. M.R. testified he tried to push the door shut but defendant pushed it open and walked in with a gun. Defendant pointed the gun at M.R.'s head and demanded M.R. give him his money. M.R. told defendant he could take whatever he wanted. At gunpoint, defendant ordered M.R. to sit on the bed while Beurmann gathered M.R.'s belongings. Fearing for his life, M.R. complied.

Defendant and Beurmann then left with M.R.'s pants. M.R. saw Beurmann with his pants get into a truck in the parking lot. M.R. pleaded for his pants. M.R.'s wallet with $1,800 in cash and two sets of keys were in his pants pockets. After Beurmann rummaged through M.R.'s pants, she tossed them from the truck. Defendant walked up to M.R. and handed him his phone, which M.R. did not realize had been taken. Defendant told M.R. in a threatening tone, "'Answer the phone.'" M.R. understood this to mean he should expect a call from defendant possibly trying to extort money from him. Immediately after defendant and Beurmann drove away, M.R. called 911, fearing defendant might harm his family. M.R. reported he had been robbed.

4

Shortly after M.R. called 911, police officers noticed defendant and Beurmann sitting in a truck a quarter mile from the motel. An officer saw defendant reach under the seat. The police took defendant and Beurmann into custody. The police found $1,908 in cash in defendant's pocket, a methamphetamine pipe in Beurmann's bra, and 12.36 grams of methamphetamine in the truck. The police also found a loaded gun and M.R.'s wallet under the seat. The police transported defendant and Beurmann to the motel, where M.R. identified them.

Beurmann was charged with robbery and pled guilty to a lesser crime of being an accessory after the fact to the robbery. Before pleading guilty, Beurmann had intended to testify, consistent with her previous statements to the police, that there was no robbery. Her plea bargain required her to state under oath that there had been a robbery. After doing so, she was released from jail and five misdemeanors against her were dismissed.

Beurmann testified she and defendant robbed M.R. "at gunpoint." Defendant always carried a gun. At the time of the robbery, Beurmann was a prostitute to support her drug habit. M.R. had bought her things and paid Beurmann cash, which she used to buy drugs. Beurmann became disgusted with M.R. She texted defendant to come get her. When defendant picked her up, she told him M.R. was carrying a lot of cash. Defendant and Beurmann then returned to the motel. Beurmann testified she saw defendant with a gun in M.R.'s motel room.

5

Defendant testified he went to the motel solely because Beurmann told him she was in trouble. After he picked up Beurmann at the motel, Beurmann said she forgot something. Defendant took her back. Beurmann went inside M.R.'s motel room and the door closed. Concerned for her safety, defendant knocked on the door to get Beurmann. When the door opened, defendant told Beurmann to get her belongings and leave. Defendant acknowledged he was carrying a gun but testified it remained tucked in the front of his waistband at all times. Defendant stated, "I believe that it was visible from the front of my pants because I had my shirt kind of lifted in a way to where it could be seen." Defendant was unaware Beurmann took M.R.'s pants containing M.R.'s belongings. When defendant learned Beurmann had taken M.R.'s phone, defendant gave it back to M.R.

Defendant further testified that the night of the charged offense, he had about $2,300 in his wallet, which included $900 he borrowed from T.M. and $1,100 he borrowed from J.P. Defendant was planning to use the money to pay for retrieving his impounded car.

Defendant's girlfriend, T.M., testified that, with her consent, defendant withdrew $900 in cash from her bank account on August 30, 2019. J.P., a business associate of defendant, testified he loaned defendant $1,100 but did not remember when.

6

## III.

## THERE WAS NO INSTRUCTIONAL ERROR

Defendant contends the trial court committed prejudicial error by failing to instruct the jury sua sponte on the offense of simple assault (§ 240), a lesser included offense of the charged offense of assault with a firearm (§ 245, subd. (a)(2); count 2). We disagree.

The trial court is required to instruct the jury "'"'on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request.'"' [Citation.] 'Conversely, even on request, the court "has no duty to instruct on any lesser offense unless there is substantial evidence to support such instruction."' [Citation.] This substantial evidence requirement is not satisfied by "'*any* evidence . . . no matter how weak,'" but rather by evidence from which a jury composed of reasonable persons could conclude 'that the lesser offense, but not the greater, was committed.' [Citation.]" (*People v. Avila* (2009) 46 Cal.4th 680, 704-705.) We review de novo whether the trial court erred in failing to instruct on a lesser included offense. (*Id*. at p. 705; *People v. Cole* (2004) 33 Cal.4th 1158, 1215.)

It is undisputed that simple assault is a lesser included offense of assault with a firearm. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747.) "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) Defendant argues the trial court was required to instruct on simple assault because there was evidence that could have persuaded a reasonable juror that he

7

was guilty of only simple assault (§ 240), and not assault with a firearm (§ 245, subd. (a)(2)). The only evidence defendant cites is evidence (1) M.R. could not describe the gun to the 911 operator, (2) M.R.'s statement to the 911 operator that the gun was loaded, and (3) defendant's testimony that he never pointed a gun at M.R.

We conclude this evidence was insufficient to support instruction on the lesser included offense of simple assault. Although M.R. testified he told the 911 operator he could not describe the gun, defendant explained that at that time he was "traumatized." Defendant had just pointed a gun at him, threatening his life. M.R. noted he told the 911 operator the gun was a revolver. Also, when M.R. testified, he recalled the gun's handle was brown. M.R. said he could see the handle when defendant was holding it. Evidence that M.R. was unable to describe the gun to the 911 operator does not provide sufficient evidence to support a reasonable finding defendant did not use a gun when assaulting M.R.

M.R.'s statement to the 911 operator that the gun was loaded also is insufficient to support instruction on the lesser included offense of simple assault. Defendant argues that M.R. lied to the 911 operator that he knew the gun was loaded. M.R. acknowledged at trial that he told the 911 operator the gun was loaded but could not tell this from looking at the revolver. M.R. explained he merely assumed the gun was loaded because defendant confronted him with it. M.R.'s statement the gun was loaded was nothing more than a reasonable assumption under the circumstances, and was insufficient to support an instruction on simple assault.

8

The only evidence supporting a finding that defendant did not use a gun during the assault was his own self-serving testimony denying he used a gun. Such testimony was insufficient to support a lesser included offense instruction on simple assault because defendant also denied assaulting M.R. Defendant testified he went to the motel twice to pick up Sarah. The first time he did not go to the motel room. He waited in his truck for Sarah. Defendant testified that the second time, after he returned with Sarah, he waited for Sarah in the truck while she went to the motel room to retrieve her belongings. After waiting for her for a while, he became concerned about Sarah and went to the motel room. He told Sarah to get her belongings and they left. Defendant further testified that, before leaving, he discovered Sarah had M.R.'s phone and gave it back to him. Defendant admitted he was carrying a gun in his pants waistband but testified he did not remove it or use it while he was at the motel.

Because defendant's testimony did not support a finding of simple assault, his testimony that he did not use a gun while in the motel room was insufficient to support instruction on simple assault as a lesser included offense of assault with a firearm. The evidence supported either finding that defendant did not assault M.R., based on defendant's testimony, or defendant assaulted M.R. using a gun, based on M.R. and Sarah's testimony. The evidence either supported a reasonable finding defendant assaulted M.R. with a gun or he did not assault M.R. at all. The court therefore did not err in not instructing sua sponte on simple assault.

9

IV.

INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends his trial attorney provided ineffective representation by failing to request the trial court to exercise its discretion to dismiss two five-year serious felony conviction enhancements pursuant to Senate Bill No. 1393 (Legis. Counsel's Dig., Sen. Bill No. 1393 (2017-2018 Reg. Sess.) Stats. 2018, ch. 1013, §§ 1, 2.)

Defendant argues it is reasonably probable the trial court would not have imposed at least one of the two serious felony conviction enhancements had his attorney requested the court to exercise its discretion and not impose the enhancements because of the age of the prior serious felony convictions and the trial court's leniency in imposing concurrent sentencing on count 3 (possession of a firearm by a felon; § 29800, subd. (a)(1)).

The two prior serious felony convictions were for a 2001 conviction for robbery (§ 211) and attempted robbery (§§ 211, 664), and for a 2014 conviction for violating parole on a 2001 conviction for first-degree residential burglary (§ 459). Both the 2001 and 2014 convictions arose out of offenses defendant committed in 2001. The 2014 conviction was for an old warrant discovered when defendant was serving his sentence on the 2001 conviction for burglary.

Defendant filed a *Romero* motion (*People v. Superior Court (Romero)* (1996) 13 Cal.3d 497), requesting the court to strike one or both of his strike priors, which are based on the same convictions as his two serious felony conviction enhancements. Defendant argued in his motion and during the sentencing hearing that his strike priors were based

on offenses almost 20 years old and were committed when he was 18 or 19 years old. Defendant asserted that he had overcome drug addiction, was self-employed, and had become a more mature person.

The trial court denied defendant's *Romero* motion, explaining that the court chose not to exercise its discretion to strike any of defendant's strike priors because defendant had spent a large portion of his life in custody, with a criminal record beginning when he was a juvenile in 1996. The court noted that defendant was convicted in 1997 of robbery with a firearm, was paroled, violated parole, and then went to prison. After that he committed an attempted robbery in 2001 and was sentenced to 14 years in prison. When released, he violated his parole. Defendant then committed the charged offenses in 2019. The trial court concluded defendant had not learned anything from his prior convictions. He continues to engage in the same type of conduct and acted in concert with another person to set up the victim for a robbery. The court stated: "[T]he Court thinks that the defendant has earned a life sentence in this case based upon his prior conduct and his conduct in this case. [¶] So the Court doesn't think that the defendant would be deemed outside the spirit in whole or in part. And the Court will deny the motion to strike the prior."

After the court denied defendant's *Romero* motion, the parties submitted, with no request by defense counsel to dismiss defendant's two prior serious felony convictions. The court sentenced defendant to 35 years to life, which included 25 years to life under the "Three Strikes" law on count one and a consecutive 10 years for the two five-year

11

enhancements for the two prior serious felony convictions. The court stayed punishment on count 2 under section 654, and imposed a concurrent six-year term on count three (possession of a firearm by a felon).

A. *Applicable Law and Standard of Review*

In order to establish a claim for ineffective assistance of counsel (IAC), a defendant must show that his or her counsel's performance was deficient and that the defendant suffered prejudice as a result of such deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-692.) To demonstrate deficient performance, the defendant bears the burden of showing that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. (*People v. Lopez* (2008) 42 Cal.4th 960, 966.) To demonstrate prejudice, the "defendant bears the burden of showing a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mickel* (2016) 2 Cal.5th 181, 198.)

"On appeal, we do not second-guess trial counsel's reasonable tactical decisions." (*People v. Lucas* (2014) 60 Cal.4th 153, 278.) "[A] defendant's burden [is] 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ""no rational tactical purpose"" for an action or omission." (*People v. Mickel*, *supra*, 2 Cal.5th at p. 198, quoting *People v. Lucas*, *supra*, (1995) 12 Cal.4th 415, 437.)

12

The California Supreme Court has "repeatedly stressed 'that "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267, quoting *People v. Wilson* (1992) 3 Cal.4th 926, 936; accord, *People v. Johnson* (2016) 62 Cal.4th 600, 653.)

B. *No Showing of Prejudice*

On September 30, 2018, the Governor signed Senate Bill No. 1393 (2017-2018 Reg. Sess.) which, effective January 1, 2019, amends sections 667 and 1385 to give trial courts the discretion to dismiss five-year sentence enhancements under section 667, subdivision (a). (See Legis. Counsel's Dig., Sen. Bill No. 1393 (2017-2018 Reg. Sess.) ["This bill would delete the restriction prohibiting a judge from striking a prior serious felony conviction in connection with imposition of [a] 5-year enhancement"].)

Although during the sentencing hearing on August 28, 2020, defense counsel could have requested the trial court to dismiss defendant's two prior serious felony convictions under section 1385, defendant has not demonstrated his attorney's failure to do so was prejudicial. Defendant has not met his burden of showing a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Lopez*, *supra*, 42 Cal.4th at p. 966; *People v.*

13

*Mickel*, *supra*, 2 Cal.5th at p. 198.)  Defendant argues the trial court's imposition of a concurrent sentence on count 3 demonstrates that the court was lenient when sentencing him.  Defendant asserts this leniency shows it is "reasonably possible" the court would have also been lenient had defense counsel asked the court to dismiss his prior serious felony convictions.  This is speculative, not reasonably probable.  While it may be possible, defendant has not shown it is reasonably probable.

Defendant argues it was reasonably possible the trial court would have dismissed one or both serious felony enhancements, despite denying his *Romero* motion, because the trial court demonstrated leniency when sentencing defendant and the trial court has far greater discretion to dismiss prior serious felony convictions than to dismiss strike priors under the Three Strike law.  (See *People v. Williams* (1998) 17 Cal.4th 148, 161.)  In support of this proposition, defendant requests this court to take judicial notice of the legislative history of Senate Bill No. 1393, which defendant argues shows that the law was intended to prevent "inappropriately t[ying] a judge's hands" and forcing imposition of enhancements for prior serious felony convictions, which may have already been used as a strike prior.  (Senate Committee on Public Safety Analysis of Senate Bill No. 1393, dated Apr. 2, 2018, p. 5.)

Defendant's request for judicial notice of the Senate Bill No. 1393 legislative history is granted under Evidence Code sections 459, subdivision (a) and 452, subdivision (c), as an official act of the legislature, consisting of a document produced by

the Senate Committee on Public Safety Analysis of Senate Bill No. 1393, dated April 2, 2018.

Although Senate Bill No. 1393's legislative history shows that the Legislature intended to provide the trial court with discretion to dismiss prior serious felony convictions, particularly when already used as strikes, there is no showing it is reasonably probable the trial court would have done so had counsel requested it. Furthermore, the trial court's stated reasons for denying defendant's *Romero* motion demonstrate that, even if requested, it is not reasonably probable that the trial court would have granted dismissal of one or both of defendant's prior serious felony convictions.

In addition, we must presume the trial court was aware of its discretionary authority to dismiss defendant's prior serious felony convictions, even in the absence of defense counsel making such a request. (*People v. Coddington* (2000) 23 Cal.4th 529, 623; *People v. Reyes* (2016) 246 Cal.App.4th 62, 82.) The law authorizing such discretion had been in effect for 20 months at the time of sentencing. "In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.'" (*People v. Thomas* (2011) 52 Cal.4th 336, 361, quoting *People v. Coddington*, *supra*, at p. 623; see *People v. Reyes*, *supra*, at p. 82.)

The burden is on defendant to demonstrate that the court misunderstood its sentencing discretion. (*People v. Reyes*, *supra*, 246 Cal.App.4th at p. 82.) Defendant has not met this burden or demonstrated prejudice. He has not shown that it is reasonably

15

probable the trial court would have dismissed one or both of defendant's prior serious felony convictions had defense counsel requested the court to do so.

V.

ABILITY TO PAY FINES AND FEES

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), defendant argues that that this court must strike the court operations and facilities fees and stay the restitution fine because the fines and fees were imposed without an ability-to-pay hearing or any finding of ability to pay. We disagree. If there was any *Dueñas* error, the error was harmless.

During sentencing, the court indicated it had reviewed defendant's probation report. The probation department recommended the court find defendant had the ability to pay $750 for appointed counsel; $727 for investigation costs; $120 for the court operations fee (§ 1465.8); $90 for the court construction fee (Gov. Code, § 70373); a $10,000 restitution fine (§ 1202.4); and a stayed $3,000 parole revocation restitution fine (§ 1202.45).

The court stated during sentencing that it found that "the defendant does not have the present ability to pay for appointed counsel fees nor for the cost of conducting the presentence investigation report." Without stating any additional findings on ability to pay, the court ordered defendant to pay other fines and fees totaling $3,210. Those fines and fees included a court operations fee of $120 ($40 per count), a court construction fee

16

of $90 ($30 per count), a $3,000 restitution fine, and a stayed $3,000 parole revocation restitution fine.

*Dueñas* held that defendants have a due process right under the federal and state Constitutions to a hearing on their ability to pay court operations and facilities fees. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.) In addition, "to avoid serious constitutional questions" raised by the statutory restitution scheme, the court must stay execution of the mandatory restitution fine unless the court determines that the defendant has the ability to pay it. (*Id*. at p. 1172.) The same court that decided *Dueñas* has since clarified that, at the ability to pay hearing, defendants bear the burden of showing their inability to pay, and the court "must consider all relevant factors," including "potential prison pay during the period of incarceration to be served by the defendant[s]." (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490-491.)[3]

The People argue that defendant forfeited his *Dueñas* objections to the fines and fees by not objecting in the trial court. Defendant contends that if he forfeited the issue, his attorney's failure to object constitutes IAC. We need not decide the issues of forfeiture, IAC, or *Dueñas* error because, even assuming there was *Dueñas* error, the error was harmless beyond a reasonable doubt because the record shows defendant had the ability to pay from prison wages the court-ordered fines and fees totaling $3,210.

---

[3] The California Supreme Court has granted review of the issues presented by *Dueñas* in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844.

17

(*People v. Jones* (2019) 36 Cal.App.5th 1028, 1035; *Chapman v. Cal.* (1967) 386 U.S. 18, 24; *People v. Kipp* (1998) 18 Cal.4th 349, 377.)  Defendant was sentenced to a term of 35 years to life.  He was 40 years old at the time of his sentencing.  According to the probation report, he was in good health, graduated from high school, and had been self-employed as a handyman for the past four years, earning approximately $3,500 a month. Also, although he had no assets, he also had no debts.

We may consider defendant's potential prison wages in evaluating the prejudicial effect of alleged *Dueñas* error.  (*People v. Jones*, *supra*, 36 Cal.App.5th at p. 1035; *People v. Taylor* (2019) 43 Cal.App.5th 390, 402.)  "[E]very able-bodied" prisoner is required to work.  (§ 2700; Cal. Code Regs., tit. 15, § 3040, subd. (a).)  A prisoner's assignment to a paid position "is a privilege" that depends on "available funding, job performance, seniority and conduct."  (Cal. Code Regs., tit. 15, § 3040, subd. (k); accord *People v. Rodriguez* (2019) 34 Cal.App.5th 641, 649, *People v. Taylor*, *supra*, 43 Cal.App.5th at p. 402.)  Wages in prison range from $12 to $56 per month, depending on the job and skill level involved.  (Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1).)  Fifty percent of defendant's wages and trust account deposits will be deducted to pay any outstanding restitution fine, plus another 5 percent for the administrative costs of this deduction.  (§ 2085.5, subds. (a), (e); Cal. Code Regs., tit. 15, § 3097, subd. (f); *People v. Taylor*, *supra*, at p. 402.)

Earning the $12 monthly minimum prison wage, defendant will be able to pay off his $3,210 in fines and fees in less than 25 years. Given defendant's age, the length of his sentence, and his employment history, we are persuaded beyond a reasonable doubt that he has the ability to pay the fines and fees imposed. We therefore conclude any *Dueñas* error or deficient performance by counsel was harmless.

VI.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

MILLER
Acting P. J.

RAPHAEL
J.

19